36    453
46   1493
36    453
48    358
36    453
52   1179

## No. 8995.

VICTORIA H. DICKSON AND HUSBAND VS. H. P. DICKSON ET AL.

### On Third Opposition of M. L. Dickson.

Property composing the community between husband and wife accrues, at the dissolution of the community by the death of one of the spouses, in full ownership to the survivor and to the heirs of the deceased eventually, subject to a usufruct in favor of the former and always burdened with the claims of creditors of the community, who can subject it to the payment of their debts.

The surviving spouse and the heirs can mortgage their undivided share or interest in the real estate thus acquired. The mortgage creditor, in seeking payment of his claim (there being no creditor of the community), is entitled to be paid out of the proceeds of sale of such interest, in preference to any claim of the heirs against the surviving spouse not recorded at the date of the mortgage.

The partnership or community, which may have been formed after the dissolution, between the surviving spouse and the heirs, is not to be likened to that once existing between husband and wife. Claims arising after dissolution of that community between the spouses, do not enjoy the rights and privileges attaching to claims against the conjugal community property.

An improper allowance of interest on the decree can be corrected and stricken out, without granting a rehearing.

APPEAL from the Second District Court, Parish of Bossier. *Drew*, J.

*J. D. Watkins* for Third Opponent and Appellant.

*Land & Land*, *J. H. Shepherd*, *R. J. Looney*, and *Merrick, Foster & Merrick*, contra.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The third opponent claims to be paid, by preference to all others, out of the proceeds of the sale of half and more of the property herein sold to effect a partition between the widow and heirs of Michael Dickson.

She alleges that after the death of said Michael Dickson she loaned to his widow the amount claimed, which was secured by the latter by mortgage on her interest in certain described real estate which was

herein sold; that her claim is liquidated by judgment and that she is entitled to payment of it in preference to the heirs of Michael Dickson.

Her pretensions are resisted by all the parties to the partition suit, who contend that Mrs. H. P. Dickson could not, and did not, give the opponent a mortgage susceptible of out-ranking the claims which they have against her, and that this Court has so held; that the interest of Mrs. H. P. Dickson in the property is completely absorbed by such claims; and that nothing remains for the opponent to take.

The lower court sustained the defense and rejected the third opposition. From the judgment thus rendered the opponent appeals.

The facts are simply the following:

Michael Dickson was married. During his marriage, community property for a large amount was acquired. He died leaving no debts, and seven children the issue of his marriage. At his death, his widow took possession of all the property which was acquired during the community, and his heirs of age accepted his succession unconditionally. Five years after his death his widow borrowed from the third opponent the sum of ten thousand dollars and secured its reimbursement on her interest or share in the real estate thus acquired. This creditor, at maturity remaining unpaid, brought suit against the widow. One of the heirs intervened to resist the claim. Judgment was rendered in favor of the plaintiff, on appeal to this Court, recognizing her mortgage and directing that the property mortgaged be sold to pay the debt, interest and costs recognized by the judgment appealed from. 33 A. 1244.

It is that debt and that mortgage thus judicially recognized which this opponent now seeks to enforce by payment out of the proceeds of the property mortgaged.

There is no dispute about the existence of the judgment, or about the want of proper inscriptions and reinscriptions required to keep the debt and the security alive.

The suit in which the third opponent intervenes asking payment, was brought by and between the widow and heirs as co-proprietors of the real estate, for a partition; the usufruct of the widow over the half of her children having been judicially declared forfeited and, therefore, having ceased.

Differences *between* the co-partitioners having arisen in that suit, the matter came up before this Court and was finally adjusted by a decree liquidating and settling their respective rights, the one against the other. The third opponent was not then a party, in her individual capacity, to that litigation. 33 A. 1370.

The defendants in the opposition contend that the opponent is estopped and concluded by what was said by this Court in its opinion in that case. This cannot be, for the reason that she never appeared in those proceedings otherwise than as tutrix, and never asserted her claim therein as a creditor, and the decree of the Court does not adjudicate on that claim.

But it is insisted, as a new proposition eventually, if the opinion in that case does not operate as an estoppel or *res adjudicata*, that the opponent never acquired a mortgage on the interest of the widow in the *common* property which authorizes her to recover her claim out of the proceeds of the property mortgaged and sold, by preference over the heirs as creditors of the mortgagor.

Indeed, it is claimed that the interest of the widow in community is residuary and that in a partition of the succession property her obligations to the heirs, her co-partners, must be first satisfied out of the mass of the common property; that, as after such satisfaction there remains no *residuum* in her favor, there is nothing to which the special mortgage granted by her on her interest in a particular tract of land once belonging to the community can attach.

Such is not the law of Louisiana. The jurisprudence expounding it has, by a long line of precedents, well sustained on principle and reason, uniformly established the reverse. A survey of that jurisprudence justifies the unequivocal announcement that the following propositions have been recognized as law and constitute rules of property from which no departure can be sanctioned:

Property acquired by the industry of either or both of the spouses, during the existence of the community, becomes common property and is liable for community debts.

At the dissolution of that community by the death of either of the spouses, the property they acquired vests, in the absence of adverse ante-nuptial stipulations, in the surviving spouse and in the heirs of the deceased, in the proportion of one-half in the former and of a like share in the latter, collectively or jointly.

If the community has creditors, they can have the community liquidated, or pursue the widow and heirs if they have accepted it, and subject the property to the satisfaction of their debts by divesting the title thus acquired.

If the community has no creditors, the title which the widow and heirs have acquired, the former as surviving partner in community the latter as heirs, becomes absolute and indefeasible. The widow and the heirs continue in the quiet ownership of the property.

In either case the widow and heirs can mortgage their interest in such property, if it be real estate, and the creditor acquiring such mortgage is entitled in case of non-payment to have it seized and sold to satisfy his claim, subject to be expropriated or out-ranked only by creditors of the community and of the succession of the deceased spouse, and whose mortgage was recorded anterior to his own, the succession creditors, however, to be paid out of succession property.

The authorities invoked by the appellees go only to the extent of declaring that the widow, or surviving spouse in community, while the succession of the deceased is under administration and before its creditors are paid, cannot mortgage her share in any specific piece of real property acquired during the community, to the prejudice· of creditors of that community and of the succession. Those authorities are not destructive, but merely restrictive, of the right of the widow and of the heirs to sell or to mortgage.

In the very early case of Gale vs. Davis, 4 M. 653, the Court said:

"The moment that the husband or wife dies, the title to one-half of the common property vests immediately in his or her heirs. They become joint owners of the whole, together with the survivor."

In the subsequent case of German vs. Gay, 9 La., 382, the Court said:

"According to our understanding of the Code, the distinct interest of the parties attaches at the dissolution of the marriage, subject, however, to the right of the wife or her heirs to renounce and thereby exonerate herself from the payment of the debts of the community. ⁂ His (the husband's) authority as master of the community ceases on the dissolution of the marriage. The right of the heirs of the deceased party then attaches to have a partition of the effects, subject to the payment of the debts.

Again, in Hart vs. Foley, 1 Rob. 381, the Court said:

"After the death of one of the spouses the community, in a legal sense of the word, is terminated. Each party is seized of one undivided half of the property, *subject* to the payment of debts."

In the case of Ware vs. Jones, 19 A. 428, the Court distinctly announced that the heirs of the deceased become seized of the property of their ancestor at the moment of his death.

The surviving widow is seized of one-half of the community property and the heirs of the other. The title vested continues in them, subject to be divested at any time by the creditors or the administrator for them.

The widow and the heirs take the estate absolutely, subject to the debts and charges against it, and all that is meant by residuary rights is, that the property is thus encumbered.

They are not the less the owners of the property because it is followed by and subject to the charges against it.

This doctrine was uniformly recognized and applied by this Court in a number of cases, in which the right of the widow and of the heirs was admitted to mortgage, and the right of the creditor to enforce his claim against them with the security. 4 M. 653; 7 L. 157, 222; 17 L. 238; 1 R. 380; 5 R. 299; 7 R. 404; 2 A. 30; 3 A. 562; 19 A. 167; 21 A. 253; 22 A. 185, 264, 24 A. 264; 26 A. 260; 27 A. 503; 30 A. 93; 31 A. 493; 32 A. 162, 848, 972; 33 A. 151, 584, 1244.

In the same sense are the Spanish and French authorities, to which much weight is due. 4 Febrero Adicionado, p. 228, No. 29; 2 Troplong Mar. Contr. No. 854, pp. 133–5; 13 Toullié̈r, No. 211, 245; 3 Troplong, No. 1081, p. 218; 3 Troplong Priv. and Mort. p. 392, No. 818; 3 Marcadé, p. 180, No. 258; see Articles 986–996, French Code of Practice; C. N. 803; 2 Zachariœ, pp. 136–7; 2 Troplong Priv. and Hyp. p. 175, No. 468 (*ter. et al.*); 2 Paul Pont. Priv. and Hyp. p. 634, No. 633; *Id.* p. 638, No. 636, *et al.*; same author, Vol. I, p. 291, No. 301.

When the surviving widow and the heirs of the deceased husband continue in possession, their co-ownership and enjoyment is not a prolongation of the community which had existed between the spouses. That community, dissolved by the death of the first dying spouse, is not revived and continued between the survivor and the heirs of the departed one, who own by a different title and are governed by different laws.

The condition of the surviving spouse and of the heirs, in such a case, can well be likened to that of husband and wife, once common in property, subsequently judicially separated in property, and who nevertheless continue to own and hold in common.

Claims may subsequently arise in favor of the heirs, co-proprietors, against the mother; but they do not acquire, and do not enjoy, the rights and privileges attaching to claims by creditors of the community, so as to out-rank creditors of the widow, becoming such after the death of the husband and acquiring a mortgage on her half of the real estate once belonging to the partnership of acquets and gains. The claims of the creditors of the community are one thing, and those of the heirs *inter se*, or against the widow after the dissolution of the com-

munity, are another. Such claims, on the part of the heirs, could out-rank such mortgage creditors in the event only of their previous regis-try, a feature totally lacking in the present controversy.

The character of the community or partnership which it is claimed was formed and continued between the heirs and the widow, has no significance in this litigation, so as to affect the rights of the third op-ponent as a mortgage creditor of the widow.

Whatever the laws be which regulate among themselves, or even as to third persons, the rights of heirs owning and holding in common inherited property, they cannot be legitimately extended to property thus owned and held by heirs and the surviving partners in commu-nity. No interpretation of the word *rule*, found in Article 1290, R. C. C., can justify such construction of the laws on the subject. That word exclusively refers to *matters of form* for the purpose of effecting a par-tition between or among the owners mentioned in the law.

A first recorded mortgage on real estate produces the important effect of out-ranking all such as are subsequently inscribed, and *a fortiori* claims which are not registered and which, even if registered, would not on that account create a mortgage. Of this character are those of the heirs in this case.

Laws creating privileges and legal mortgages are to be strictly con-strued. Accordingly, no privilege or legal mortgage, or right equiva-lent thereto, can be urged and recognized by the courts unless the law creating it be pointed out and such law be found, when examined, as really creating it and operating as claimed.

The heirs who, after the dissolution of the community, continue to own in common with the surviving spouse, where the latter has a right of usufruct over their share, are not allowed by law a legal mortgage on the property of their parent as a substitute for the security to which usufructuaries are subjected.

Even if the law did grant them such mortgage, it was not recorded, and could not, therefore, be made to operate to the opponent's injury.

Permitting their claims to out-rank the opponent would be virtu-ally to recognize in their favor a legal mortgage and giving to it the force and effect attaching formerly to a *tacit* mortgage, when such mortgage has had no existence *as such* since January 1, 1870, in this State. It would be judicial legislation, in the teeth of express consti-tutional prohibition which forbids, in negative terms, the existence as to third persons of unrecorded mortgages. Constitution, 176.

In the case at bar, the title acquired by the widow and heirs was absolute as there existed no community debts. The mortgage consented by the widow on her interest, which is one-half and one-fourteenth, is a valid mortgage and ranks all the claims which her children may have against her for any cause, and which were not secured by mortgages and recorded previous to the registry of the mortgage consented by her in favor of the third opponent.

The district judge is not at fault for ruling as he has done, for he was guided by the *dictum* in the partition suit, 33 A. 1370, under part III of the opinion, from which this Court recedes as a proposition of law. The Court there distinctly said that the questions raised touching the validity and effect of certain conventional and judicial mortgages which were created by or against Mrs. H. P. Dickson on her interest in the community property, were of no importance, and it therefore abstained from passing formally upon them, dismissing them from its attention by simply uttering the remarks or considerations which constitute the *dictum* in question, which is of no effect as regards the third opponent in this case. Whether justified or not in that case, the announcement is not binding on the opponent, who was not a party to the proceeding, in any manner so as to be personally affected thereby.

It is, therefore, ordered and decreed that the judgment appealed from be reversed; and,

It is now ordered, adjudged and decreed that there be judgment in favor of the third opponent, Mattie L. Dickson, recognizing her as a creditor for eight thousand one hundred and seventy dollars and sixty-five cents ($8170 65) and interest, as claimed of Widow H. P. Dickson, and as such entitled to be paid the same by preference over all others, out of the proceeds of the sale of the interest or share of the said Widow Dickson, namely, one-half and one-fourteenth of the property mortgaged and sold herein to effect a partition, with costs in both courts.

---

### DISSENTING OPINION.

FENNER, J. This is the same partition suit which was before us two years ago, and in which we rendered the opinion and decree reported at p. 1370, 33 Annual.

In that case, the holders of conventional mortgages granted by Mrs. H. P. Dickson upon her interest in specific community property, and standing in identical case with the present opponent, were parties, and asserted the same rights with reference to their mortgages which the opponent here asserts with reference to her own.

In disposing of the questions thus necessarily arising, we said: "Much learning and ingenuity are expended in discussing the validity and effect of certain conventional and judicial mortgages which were created by or against Mrs. H. P. Dickson upon her interest in the community property. In the view we take of this case, these questions are of no importance. They are sufficiently disposed of by the following considerations: The interest of the widow in community is residuary only, resembling the interest of an individual partner in the partnership property. It can only be ascertained and defined after the settlement of the marital partnership.

"From the date of Michael Dickson's death, this entire estate, movable and immovable, has belonged to Mrs. Dickson and the heirs of Michael Dickson as partners in community. As *legal usufructuary as well as administratrix*, she has had *the use and administration of the entire property*, entitled under the law to all the revenues for herself, but under the obligation. at the termination of her usufruct, to produce in such condition as the law requires, the property susceptible of perfect usufruct, and to account for that used or consumed by her in the exercise of the imperfect usufruct. All the property or its equivalent held by her in indivision, and administered and used by her, must enter into and form the basis of the settlement and partition; the debts due by the partnership must be paid; the accounts of the partners must be settled and their respective interests ascertained, and according to these interests the partition must be made. The residuary interest of the widow, thus finally ascertained and settled, is the only source to which her individual creditors, whether secured by mortgage or not, can look for satisfaction of their claims. Inasmuch, therefore, as under these circumstances the mortgages referred to cannot affect the obligation of the *administratrix and usufructuary* to account to her co-partners and cannot prejudice the rights of the *heirs* to have the interests coming to them *under such accounting* satisfied out of *the entire mass of the community*, it follows that the validity or invalidity of said mortgages are matters exclusively between Mrs. Dickson individually and the mortgagees, and do not figure as factors in this partition."

I am at a loss to conceive upon what ground it can be said that the above passage was a mere *dictum*, "not necessary to the decision of the cause." If it was not necessary in that case to pass upon the rights of mortgage creditors there asserted, neither is it necessary to pass upon the rights of opponent as asserted here.

In my humble judgment, with due deference to the majority of the Court, their opinion herein does not grapple with the true question in this case, nor is it touched by any of the decisions quoted.

The general proposition is not disputed that, at the dissolution of the community, the surviving partners and the heirs of the deceased partner become undivided proprietors of the community property, subject to the payment of the community debts. They become so precisely in the same manner and on the same principle declared, in reference to heirs *inter cese*, by Art. 1292 of the Code, which says:

"When a person, at his decease, leaves several heirs, each of them becomes an undivided proprietor of the effects of the succession, which forms among the heirs a community of property, as long as it remains undivided."

This "community of property" is subject to be terminated by "partition" which is defined to be a "division of the effects, of which the succession is composed, among all the co-heirs, according to their respective rights." C. C. Art. 1293.

The right of every co-heir to such a partition and the manner in which it is to be made are recognized and specifically defined in the following articles of the Code. It involves a complete accounting between the heirs, which must include not only "the sums which each of the co-heirs owes to the *deceased*," but also "those which each of the co-heirs may have *received* or disbursed on account of *the succession*," and "those which each of the co-heirs may owe by reason of damages or injury which have been caused by his fault to the effects of the succession." C. C. Art. 1350.

The Code distinctly provides that, in the formation of the *active mass*, it is to include not only the property movable and immovable remaining in the succession or the proceeds of sale thereof, and the sums to be collated, but also the debts due by the heirs on account of succession funds which may have been received and converted by them as above indicated. Art. 1356.

From this *active mass*, the deductions pointed out in Art. 1359 are to be made, and the balance is to be divided according to the interests of the heirs. Of course, the shares of the heirs who owe nothing are to be first satisfied out of mass, while the shares of the heirs who do owe, are to be diminished by the amounts so due by them.

Thus is ascertained the final *share* coming to each heir.

The Code recognizes the power of each heir, during the pendency of the indivision or "community of property," to affect his interests by "mortgages, liens or privileges," but, it expressly provides that "the mortgages, liens or privileges existing against one of the co-proprietors, shall, by the mere fact of the judicial partition, attach to the *shares* allotted to him by the partition, and cease to attach to the shares allotted to his co-proprietors." Art. 1338.

It would have been impossible for the legislator to declare in plainer terms that co-heirs in indivision, although they are "undivided proprietors" of all the effects of the succession, hold the same subject to the necessity, not only of settling succession debts, but also of a full accounting between themselves; that their final *shares* are only determinable after such settlement and accounting; and that any mortgages, which they may grant upon their individual interests, will attach only to their *shares* as thus finally determined.

That like principles apply to the case of an unsettled community, I think, does not admit of serious question.

A reference to our former opinion and decree in this case, will show that we applied them in all their length and breadth.   33 A. 1370.

I cannot think that we erred in so doing.

If the widow and heirs be regarded merely as *co-proprietors*, these rules apply *ex vi terminorum* of Art. 1290 of the Code.   If the community effects be regarded as the property of a dissolved, but unsettled *partnership*, it is elementary that like rules apply and that one partner cannot alienate his interest in particular assets or in the whole estate, to the prejudice either of creditors or of his co-partners.   Claiborne vs. Creditors, 18 La. 501.   Indeed it is difficult to understand upon what grounds of law or reason rules should be applied to the interest of the widow in this unsettled community, different from those applicable to the interests of the heirs, her co-proprietors.

The case presented is this:   A large community estate fell to the widow and heirs, several of the latter minors.   It consisted of immovables and of movables of great value.   The widow, as administratrix of the succession and as legal usufructuary, entered into the possession of the entire estate.   She converts into cash all the movables, exceeding in value her entire share, and appropriated it to herself.   She then mortgaged for her individual debts her share of the immovable property.   But for this mortgage, it would not be disputed that upon a settlement with the heirs by partition, the debt due by the widow for the community funds, received and converted by her, would form part of

Dickson and Husband vs. Dickson et al.

the *active mass*, and that the immovables, or proceeds thereof, would go to the heirs to the extent necessary to make them equal with the widow.

It is claimed, however, that by reason of this mortgage, the mortgagee succeeds to rights which the widow would not have had, and may withhold one-half the proceeds of these immovables from the accounting due to the heirs.

The answer is: *Nemo plus transferre potest quam habet.* The very case is presented which was anticipated in Cestac vs. Florane, 31 A. 496, where, in discussing the effect of a mortgage granted by the widow on a particular immovable of an unsettled community, this Court said: "The heir, as well as the creditor, is entitled to have the administration of the succession, as an entirety, completed. *Non constat* but that the widow has already received her full half of the entire succession; and if a mortgage given by her upon parts of its remaining property were held good and the property alienated by its foreclosure, the heir would be denuded of his inheritance."

I am aware that the decisions are conflicting as to the right of the surviving partner in an unsettled community to mortgage her share in particular assets; but, conceding that right, no decision exists holding that such mortgage by a widow administering the entire community, could defeat her obligation to account to the heirs, or could have effect to reach more than the *share* of such community resulting to her after such account and settlement made according to the law regulating partitions.

If such be the law, a more efficient *recipe* for "denuding heirs of their inheritance" could hardly be devised.

I, therefore, dissent from the opinion and decree.

## DISSENTING OPINION.

MANNING, J.   I fully concur in the dissenting opinion of Mr. Justice Fenner, but even if I did not agree with him upon the law as stated by him as a general proposition, I should still join him in dissenting, because I think it has already been announced as the law of this particular case.

This identical partition suit was before this Court in 1881, and a decree was sent down, so minute in its directions that it covers two printed pages of the Report.   Dickson Case, 33 Ann. 1378-9.   The lower court obeyed the instructions from here, and this appeal is from its judgment,

rendered in conformity to them, and in execution of the law governing partitions, thus distinctly enunciated to the judge below for his guidance in the further progress of the suit.

The majority opinion holds that the plaintiff was not a party to the suit, when it was here before, in her capacity of mortgagee, although she was a party to it in another capacity, but the opinion then rendered dealt with the whole question, as is manifest from the quotation from it incorporated in Justice Fenner's dissent just read, which announced that under the circumstances, that had already been amply set forth, the mortgage given by the defendant Hannah could not affect her obligation to account to her copartners, and could not prejudice the rights of the heirs to have their interests satisfied and therefore those mortgages did not figure as factors in the partition.

Now comes one of the parties to that suit, albeit not then claiming as mortgagee, and insists that her mortgage shall figure as a very important factor in that partition, and her claim is allowed and enforced. I cannot approve it.

## On Application for Rehearing.

BERMUDEZ, C. J.　A re-examination of this case has served only to confirm us in the correctness of our views previously expressed. Our decree must, however, be modified.

The amount due opponent on the day of sale in capital and interest was $18,533 33, subject to credit aggregating $10,362 68, which left a balance of $8170 65, on which interest was improperly allowed.

The error can be corrected without granting a rehearing.

It is, therefore, ordered that our previous decree be amended by striking therefrom the words "*and interest,*" which follow the amount allowed and that thus reformed, it remain undisturbed.

Rehearing refused.