The opinion of the court was delivered by
Watkins, J.
Suit is brought via ordinaria on the defendant’s: promissory note for five thousand dollars, secured by special mortgage, and plaintiffs’prayer is for personal judgment for that amount, with interest, and a decree of foreclosure against tbe property mortgaged.
In the petition the note is fully described, with all of the various *1486 endorsements thereon, renewing and extending payment thereof from time to time.
In limine, the exception was tendered that the defendant, A. B. Cooper, was not, at date of suit, in possession of the premises mortgaged, having sold and delivered the same to the intervenors. But the act of mortgage is authentic in form, was duly recorded, and contains the pact de non alienando.
And the well settled jurisprudence of the State is that “ a purchaser of property subject to a mortgage containing that clause, and duly recorded, can not claim to be in any better condition than his vendor, nor plead any exception the latter could not. Those who purchase or acquire real rights on it, subsequently, are presumed to know the titles or incumbrances under which they hold.” 1 Hennen’s Digest, p. 955, No. 1, and authorities cited.
The judge a quo correctly overruled the exception.
Substantially, defendant’s answer is that the note sued on was executed, and the mortgage consented, to secure his current, running commercial accounts with the plaintiffs for advances of necessary plantation supplies made and to be made to hi u in the course of the year 1887-88. That in the course of said dealings he was charged large sums in the way of usurious interest and unlawful charges for commissions on cottons not shipped to nor sold by them. That by the subsequent execution of various other notes and making subsequent payments, any possible indebted aess that might have been evidenced by the note sued on was extinguished by novation, and consequently nothing is due thereon to plaintiffs; and he avers that these facts are disclosed on the face of the plaintiffs’ accounts current, which were duly rendered to him. He concludes his answer with the prayer “ that the note sued onbe declared novated and extinguished, and utterly without consideration; and that the mortgage by which it was originally secured be declared discharged and abrogated by the extinguishment of the said note.”
The children and heirs of Mrs. Martha A. Cooper, deceased wife of A. B. Cooper, intervene and allege that their mother died on the 9th of December, 1883, leaving them as her survivors, and a considerable amount of real and personal property.
That her surviving husband, their father, did not qualify as administrator of her succession, nor as tutor of the then minor children, issue of his marriage with their mother.
*1487 That he continued in possession of the community property, which consisted of a plantation, stock and implements, 'and controlled, cultivated and enjoyed same up to and including May 2, 1893, when he recognized “their ownership of one-half of said property and transferred his half thereof to (them) in satisfaction and settlement of the amount due their, mother by the community between her and their father, on account of (her) paraphernal claims; all of which is set forth in the deed from A. B. Cooper to petitioners, dated May 2, 1893, and of record,” etc. (Our italics.)
They aver further that, “ at the time of their mother’s death, her said husband owed her largely on account of money received by him from sale and rent of her separate property, and for moneys received by him from the estate of John Prewitt, the father of said Martha A. Cooper. That said claims were due by the community, and that A. B. Cooper had no ownership or interest in the community property until he had settled the debts of the community.
“ That petitioners being, by virtue of their heirship, creditors of the community, are entitled to be paid out of said A. B. Cooper’s estate, and part of the community, in preference to debts contracted by him subsequent to the death of his wife.
“That, if her succession had been (administered), he could not have created debts to bind said property, or any pari thereof, until the succession had been settled and closed; and that he had no greater power or right to bind said property without administering said succession.
“That their claims against A. B. Cooper, as above set forth, amounted to four thousand six hundred dollars, in settlement and discharge of which he sold his interest in the above described plantation to (them).”
That the mortgage plaintiffs seek to enforce was previously executed on the 2d of April, 1887, and the object of their intervention is to resist and oppose the enforcement thereof on the following grounds, viz.:
“1. The mortgage of petitioner’s half interest in said plantation, inherited from their mother by her surviving husband, was and is an absolute nullity, because said interest never belonged to A. B. Cooper, and could not be disposed of by him after the dissolution of the community.
“2. The mortgage as to the other half interest is null and void *1488 because it was made on property belonging to the marital partnership, before said partnership was settled between the surviving spouse and the heirs of the deceased spouse — which settlement; when made, showed that A. B. Cooper owed his deceased wife more than the value of his interest in the community.
“8. That after the execution of the note sued on, the defendant delivered more than enough cotton to plaintiffs to have paid the same, by legal imputation of payments.
“4. That the note was novated by new notes, which plaintiffs still hold, and the mortgage extinguished thereby.”
Their prayer conforms to their allegations.
Plaintiffs amended their petition so as to demand the payment of counsel fees.
They also moved to strike from defendant’s answer all the averments as to payment and novation, because endorsements on the note evidenced its extension; and farther, because the defendant had executed various written waivers and acknowledgments. We are of opinion that the lower judge very properly declined this application, as these are matters appertaining to the merits of the cause.
They then excepted to the intervention on the ground that the maker and mortgagor can not impeach his own act, and that intervenors are bound by the acts of their father, and are estopped from attacking or impeaching the act of mortgage. Further, that plaintiffs accepted the mortgage on the faith of the defendant’s recorded title, and the certificate of the clerk that there existed no prior mortgage upon it, without any notice whatever, either on the assessment rolls, or otherwise, that Mrs. M. A. Cooper, or the intervenors, claimed to have any title or privilege whatever to the recorded title of A. B. Cooper. That plaintiffs had no knowledge of the death of Mrs. M. A. Cooper at the time of the execution of said mortgage, and there being nothing of record to show that she had any legal or tacit mortgage, and there being no administration and no tutor appointed for her minor children, or legal mortgage recorded for them, they consequently believed and accepted said mortgage on the belief that A. B. Cooper was the sole and only owner of the property mortgaged. And they aver that they can not be affected by any pretended sale, or other proceedings between the' mortgagor and intervenors, made with the intention of defrauding *1489 them, and to which they were not parties, and of which they were ignorant. And for all the foregoing reasons the intervenors are estopped from disputing the validity of said note and mortgage.
These exceptions were taken up for trial and some evidence introduced, whereupon the court referred same to the merits ex proprio motu, and the plaintiff’s counsel retained a bill of exceptions to its so doing.
Under the circumstances this was a proper ruling.
The judge required evidence on which to base a ruling on the exception, and such evidence trenched upon the merits.
The answer of plaintiffs to the petition of intervention is of like character as the foregoing exceptions, coupled with the additional allegation that not only was there no administration of the estate of intervenor’s mother, but there was no property to administer and no claim on behalf of. the deceased to the property mortgaged. That the defendant, “A. B. Cooper, had been in control and possession of said property from 1871 until the present time, according to the assessment rolls and the notarial books of the parish wherein same is situated. That the pretended sale referred to in intervenor’ petition as of May 2, 1893, of said property mortgaged from their father to them is a fraudulent simulation, made with the intention of defrauding plaintiffs of their just rights of mortgage * * * as A. B. Cooper was, at the time, and is now insolvent, to the knowledge of the intervenor, and that they knew of no other property out of which they could make their debt. * * * That said sale was made totally without consideration, as defendant herein did not owe intervenors a cent; and if intervenors ever had any property (which is specially denied) it has been consumed or appropriated to their bills for board, tuition, doctor’s bills and clothing since the date of their mother’s death, which expenses of raising and educating said children (five in number) since 1883 fully amount to ten thousand dollars; most of which expenses were borne by plantiffs since 1885, as will be shown by the accounts current of plaintiffs with A. B. Cooper, running from 1885 to the present date, of which money and goods shown by said accounts at least three thousand dollars were received by the intervenors; and though some of them may have been minors, said money and necessary supplies were used by them and inured to their special benefit in defraying the expenses of their *1490 support and education, and they are bound to plaintiffs to the-extent that they, said intervenors, have been benefited,” etc.
That Mrs. M. A. Cooper never had any paraphernal property, or paraphernal claim, whatever, against her husband, and if she had, same was under the control and administration of her husband, A„ B. Cooper, and the rents and revenues thereof belonged to the community before her death, and were appropriated to the payment of' community debts, and not to the individual debts of A. B. Cooper.
These copious extracts from the pleadings evidence the earnestness and zeal with which this litigation has been prosecuted on either side, and bring out all the salient features of the respective controversies of the different parties.
Upon an examination of the pleadings and evidence the lower judge gave a judgment in favor of the plaintiffs for the amount of the note sued on, but restricted their mortgage to one undivided one-half interest in the property mortgaged to them by the defendant, and recognized the title of the intervenors to the other half interest free of the plaintiffs’ mortgage.
From that judgment both the defendant and intervenors have appealed; and, in this court, plaintiffs and appellees have answered the appeal and prayed that the decree of the lower court be so amended as to award them judgment against the intervenors, in solido with defendant, in the sum of one thousand nine hundred and eighty dollars, and to recognize and enforce their mortgage against the whole of the property mortgaged.
From a consideration of the pleadings, in connection with the decree rendered, it is evident that the judge a quo regarded the plaintiffs’ exceptions and pleas of estoppel, in respect to intervenors, not well taken- — -notwithstanding no mention is made of them — and thus-felt satisfied of the previous existence of a legal or matrimonial community between the defendant, A. B. Cooper, and Martha A. Cooper,, mother of the intervenors, which terminated at the death of the latter, and vested a title to the assets thereof in equal joint ownership-in the survivor, the defendant, and the intervenors, in equal portions, as the legal heirs of the deceased.
But the judge a quo failed to express any opinion on the other questions in the case; though his decree results in the rejection of the contention of the defendant in toto, as well as_those of the intervenors in all other respects.
*1491 ' It is, however, evident to our minds that, in so far as the decree of the lower court recognizes the title of the intervenors to one undivided half of the property, it is clearly correct and supported by the evidence; and, quoad their half interest, the plaintiffs’ exceptions were altogether unavailing. For the law is that, at the death of one of the members of the community, the title to community assets vests in the survivor and the legal heirs of the deceased, in full, joint ownership — subject to a qualification that will be subsequently noticed. Applying that rule of property to the facts of this case, and it at once becomes evident that the half interest of the intervenors as the legal heirs of Mrs. Martha A. Cooper, deceased, did not pass under the plaintiffs’ mortgage; and such is the legal aspect of the case, irrespective of the fact that nothing was exhibited on the face of the conveyance records or on the assessment rolls to the contrary; however potent the effect of same may have been as to the defendant. But in the aspect of the case in which it is at present considered, the title of the intervenors rests exclusively upon their inheritance from their mother, as the deceased member of the community, which had no relations with the piaintiffs, and whose debt against the defendant was not contracted until long subsequent to its dissolution. And the indebtedness of the defendant having been created since the dissolution of the community, it could not in any way affect the title which had vested in the intervenors, unless they had done some act which operated an inducement to the plaintiffs to alter their previous position and accept the defendant’s mortgage.
Such, however, is neither the claim nor the tendency of the plaintiffs’ averments, nor the proof.
But a more serious and interesting aspect of the case is addressed to our consideration in the averments of the intervenors, which are-to the effect that at the time of their mother’s death, in December, 1883, their father, the defendant, was largely indebted to her on account of moneys received and properties converted to his use and that of the community, all of which was that of their mother’s separate paraphernal estate, and that said indebtedness was due by the-community to them as the legal heirs of the deceased, they becoming, by virtue of their inheritance from their mother, the creditors of the community in her place and stead. And they are further to the-effect that the defendant, A. B. Oooper, possessed, as the surviving *1492 member of the community, “no ownership or interest in the community property until he had settled the debts of the community; ” and that “they, as creditors of the community, are entitled to be paid out of said A. B. Cooper’s estate, and part of the community, in preference to debts contracted by him subsequent to the death of his wife.”
The intervenors take the initiative, and judicially admit that there was never an administration upon the estate of their deceased mother, and aver that no tutor was ever appointed or qualified— natural or dative — to represent them, they being minors at the time of their mother’s death; and they further aver that had there been an administration of their mother’s estate, their father would have been powerless to contract debts to bind her estate or the property of the dissolved community, or any part thereof, until the succession of the deceased, and the community had been finally wound up, and that he had no greater power or right to bind said property in the absence of an administration. They further aver that the mortgage which the defendant executed upon his one undivided one-half interest in the community property was and “ is null and void because it was made on property of the marital (community) or partnership before (same) was settled between the surviving spouse and (themselves) as the heirs of the deceased spouse, which settlement, when made (disclosed) that A. B. Cooper owed his deceased wife more than the value of his interest in the community.”
Two propositions are thus demonstrated, (1) that the intervenors recognized the existence of the plaintiffs’ mortgage on the defendant’s half interest in the property, as an asset of the community, anterior to the date of their alleged settlement with their father, the defendant, through the instrumentality of thp dation en paiement to them of the property mortgaged; (2) that their mother’s paraphernal claim of four thousand six hundred dollars against her husband, the defendant, was not recorded during her lifetime, nor after her death, prior to the date of the registry of the plaintiffs’ special mortgage — thus eliminating the question of the rank of legal and conventional mortgages.
These two propositions being conceded, the question of law is squarely presented on the intervention and answer, as to the enforceability vel non of the plaintiffs’ mortgage against the defendant’s share in the community property, before community debts have *1493 been liquidated and settled — said community debts being unsecured by mortgage oí any kind.
This court has decided uniformly, and in varied forms of expression, (1) that at the dissolution of the matrimonial community by the death of either spouse the property acquired by the community vests in the surviving spouse and the heirs of the deceased in joint ownership; (2) that if the community have creditors they can have it liquidated, or pursue the survivor and heirs who have accepted it, ‘‘and subject the property to the satisfaction of their debts by divesting the title thus acquired; ” (3) that if the community has no creditors, the title which the survivor and the heirs have acquired becomes absolute and indefeasible. Vide Dickson vs. Dickson, 36 An. 453, and authorities cited.
As interpreting the defeasibility of the title of the survivor of the community and the heirs of the deceased partner, the following terse expressions of opinion may be quoted, viz.:
“ According to our understanding of the .Code the distinct interest of the parties attaches at the dissolution of the marriage, subject, however, to the right of the wife or her heirs to renounce, and thereby exonerate themselves from the payment of community debts. His (the husband’s) authority as master of the community ceases on the dissolution of the marriage. The right of the heirs of the deceased party then attaches to have a partition of the effects, subject to the payment of debts.” German vs. Gay, 9 La. 382. (Our italics).
“ After the death of one of the spouses, the community, in a legal sense of the word, is terminated. Each party is seized of one undivided half of the property, subject to the payment of debts.” Hart vs. Foley, 1 R. 381.
The heirs of the deceased become seized of the property of their ancestor at the moment of his death. The surviving widow is seized of one-half of the community property, and the heirs of the other. The title vested continues in them, subject to be divested at any time by the creditors, or the administrator for them. (Our italics.) Ware vs. Jones, 19 An. 428.
The community of acquets and gains is dissolved by the death of the wife. The respective interests of the surviving husband and of the (heirs) of the deceased wife attach at the moment of the dissolution to the property of the community subject to the payment of com *1494 munity debts. Tugwell vs. Tugwell, 32 An. 848; Bartoli vs. Hugenward, 39 An. 411; Heirs of Murphy vs. Jury & Gillis, 39 An. 785.
As we said in a recent case that “ the theory of our law is that a community of acquets and gains has, after the decease of one of its members, only a fictitious existence, for the purpose of liquidation and settlement of community debts; ” and that in the absence of community debts the respective interests of the survivor and heirs “ attached to the community at once and irrevocably, and thereafter it continued to be property held in joint ownership,” etc. Succession of Dumestre, 42 An. 411.
The foregoing decisions express a consensus of opinion by this •court that is absolutely authoritative, to the effect that the title of the survivor, and the heirs of the deceased member of a dissolved matrimonial community, is vested in them fully only in case there are no community debts remaining unpaid; but, in case there remain community debts unsatisfied, the community possesses a fietiiious existence, after the death of one of its members, for the purpose of liquidation and settlement of such community debts; and this, notwithstanding the surviving husband’s authority, as master of the community, ceases on the dissolution of the marriage.
This being the condition and status of the title of a surviving husband and partner of a community that has been dissolved by the death of his wife, it seems to be a clear proposition that the defendant, occupying the relation of debtor of his wife, and she at the same time being a creditor of the community, could not mortgage a greater interest or better title than he possessed in the real estate of the community.
We find in the opinion of this court in Dickson vs. Dickson, cited supra, the following statement, which is worthy of observation, to-wit:
“In either case — that is to say, whether there are debts of the community or not' — the widow and heirs can mortgage their interests in such property, if it be real estate, and the creditor acquiring •such property is entitled, in case of non-payment, to have it seized and sold to satisfy his claim, subject to be expropriated and outranked by creditors only of the community and of the deceased spouse, and whose mortgage was recorded anterior to his own, however, to be paid out of succession property.”
It would seem to place a restriction upon the claims of community *1495 creditors, as recognized in other decisions, by postponing the rights of one holding a special mortgage on the interest of the surviving member of a dissolved community,-to the payment of such community debts as may be secured by a mortgage duly recorded anterior thereto, and no others.
In our opinion that is an improper restriction on the rights of community creditors, and its maintenance would enable the surviving member of a community to defeat the collection of community debts out of his share altogether by contracting debts after the death of the deceased member and securing same by mortgage on his share.
Surely such was not the intention of the law, and is not the sense of our jurisprudence on the subject.
In the case of Dickson vs. Dickson, 37 An. 915, this court expressed it as their appreciation of tne sense of all the decisions on the subject, “ that a widow in community can not, whilst the succession is under administration and before its debts are paid, execute a valid mortgage on any specific property of the succession to the prejudice of creditors af the succession,” and then say: “Whilst therefore, a mortgage given by the widow in community during her administration of her deceased husband’s succession is not null, yet at the same time it can have no effect beyond her actual interest in the property, determinable upon a settlement of 1 he community.
“It is true that the widow’s interest in the community vests upon the death of the husband, but subject to the payment of the community debts, and, therefore, not to be ascertained till a final settlement. It would thence follow that where a mortgage is given to a certain number of heirs to secure a liability which the administration is under alike to all the heirs, resulting from her acts as administratrix, the giving of a mortgage could not confer a preference on the mortgagee over the other heirs. * * *
11 To this extent and limit the mortgage may seem to strip it of all effect and virtually pronounce it a nullity.”
By parity of reasoning this argument would seem to apply, with equal force, to a special mortgage executed by the surviving husband on his share of the community prior to its liquidation and the settlement of community debts; and to give to a special mortgage consented by a surviving husband on his share in the community propperty preference over the debts of the community that are unsecured *1496 would be to defeat the object of the law and make a defeasible title indefeasible.
In St. Charles Street Railroad Company vs. Fairex (46 An. 1022) we dealt with a similar question, appertaining to community property which had been partitioned between the widow and heirs, and against which a judicial mortgagee sought to enforce his right — the property having passed into the separate ownership of the parties.
The question propounded was: Did the creditors’ judicial mortgage against one-third interest in the community property precede all claims in rank and subject the property to the payment of the claim of the mortgagee “without regard to any pre-existing indebtedness” of the surviving widow to the defendant, and upon due consideration thereof the court said:
“If there was an amount due by Mrs. J. B. Schiller it was an amount for which her interest in the estate of her daughter was accountable. The two claims, that of the succession as a creditor, and that of Mrs. Schiller as a forced heir of her daughter, were subject to adjustment and settlement in the process of settlement in the latter’s succession.
“The mortgage of plaintiff could only be applied to the residuum of the settlement.”
That proposition being true in a case where a definitive settlement had been made, for a stronger reason must it be true in the instant case, where no settlement had been made at-all, and the mortgagor’s indebtedness contracted subsequent to the dissolution of the community.
Such was the exact situation of affairs presented in the recent case of Rawlins vs. Giddens, 46 An. 1136, in which it was “ decreed that the rights of plaintiff under the mortgage claimed by him herein be restricted to the interest of D. M. Giddens in the community between himself and his deceased wife, Mary J. Armistead, to be ascertained in proper proceedings;” no judicial settlement of that community having been made, and plaintiffs’ mortgage having been consented subsequent to the death of the wife.
It is of no consequence that there had been no administration of the estate of Mrs. M. A. Cooper, and that no tutor had been appointed to represent the minors. That their rights had remained, in a certain sense, inchoate can not have the effect of defeating the just claims of the intervenors, as creditors of the unliquidated com *1497 munity, or of estopping them from the assertion of their demands; nor does the fact that the property mortgaged had not been listed for taxation as that of the community divest the rights of the intervenors as community creditors, or operate as a fraud on the rights of plaintiffs as mortgagees. For had they taken timely and proper precaution to scrutinize defendant’s title, and to interrogate the defendant with reference to the rights of his deceased wife’s children, the difficulty might have been obviated by a proper renunciation, or their interests protected by a declination of the mortgage altogether.
Our conclusion is, that the plaintiffs’ mortgage is perfectly good and valid in respect to the defendant, but that it can only be enforced against the residuum oí defendant’s share in the community after the same has been liquidated and settled by the payment of the amount ascertained to be due the intervenors as the heirs of Mrs. M. A. Cooper, deceased.
That while we are satisfied from the record that the deceased was the owner of considerable separate property, of which she had the administration and enjoyment, and that the defendant became largely indebted to her for paraphernal funds received and used; that during the existence of the community, there was accumulated considerable property which remained in indivisión subsequent to its dissolution by the death of the wife, which was primarily liable for the payment of the debt due the deceased; yet, inasmuch as there has been no liquidation and settlement of the community, we are of opinion that all parties should be relegated to this settlement and full adjustment for the ascertainment of their rights, respectively, as we did in the case of Pior vs. Giddens, 46 An. 1406, and that of Rawlins vs. Giddens, 46 An. 1136.
But this decree is not intended to disturb, or in any manner affect the rights of the plaintiffs under the act of mortgage in respect to the residuum of the defendant’s share of its assets after community debts are paid; nor to affect the rights of intervenors under the dation en paiement, subordinated as it is to the mortgage, in respect to the aforesaid residuum — same having been accepted in good faith, on the pai’t of the intervenors, for a perfectly valid and apparently adequate consideration.
And, as the case is to be remanded, it is well to state, for the purpose of simplifying the issues for the court a qua, that from the evidence we are satisfied of the following facts, viz.:
*1498 1. That the note sued on was never intended or used for any other purpose than as a collateral security for the defendant’s current commercial account; and that it was from time to time renewed in writing, and extended, so as to prevent same from running to prescription.
2. That on the face of the plaintiffs’ account the apparent balance against the defendant is greater than the amount of the collateral security, though no demand is made for judgment thereon. Chaffe vs. Whitfield, 40 An. 631.
3. That the collateral note has never been novated or extinguished by other notes of the defendant subsequently executed for the reason that same were annually executed to and discounted by the plaintiffs and the proceeds thereof placed to the defendont’s credit; and, in the usual course of their dealings, same were satisfied by the proceeds of the sale of the defendant’s crops and extinguished. Mix vs. His Creditors, 39 An. 624.
4. That while it may be true that the plaintiffs have charged the defendant usurious interest and commissions on cotton neither received nor sold, yet plaintiffs rendered their accounts to the defendant regularly, and same were by the defendant acknowledged in writing to be just and correct, and that the effect of said written acknowledgments and waivers is to require of the defendant exceptionally strong proof of error in making same — much stronger than the record affords — before he can be relieved from their effect.
Considering the foregoing established facts, there are only the following questions left open for examination and decision in the course of the settlement and adjustment that is to be made of the community between the defendant and the heirs of his deceased wife, quoad the claims and demands of the plaintiff against the defendant, viz.:
1. The amount of the indebtedness of the community to the intervenors, and others, if other creditors there are.
2. The value of the assets of the community liable for the payment thereof.
3. The justness and amount, if any, of the claims of the plaintiffs against the intervenors, on the score of benefits received by them, during the course of their father’s negotiations with plaintiffs.
4. The amount of the plaintiffs’ claim against the defendant, on open account, as the primary obligation of the defendant, and the *1499 ■.amount of the residuum of his share of the community assets that are •applicable to their payment.
Entertaining these views, it becomes necessary to reform the judgment appealed from.
It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the plaintiffs have and recover judgment on the note and mortgage sued on only as collateral security for the defendant’s current, running commercial account, and with the reservation that ¡same is limited and restricted, in its operation and effect, to the residuum of defendant’s interest in the property mortgaged, after the liquidation and payment of the debts of the dissolved community between the defendant and the deceased mother of the intervenors ¡and other community creditors; and not to be enforced at all until the final balance of the defendant’s primary indebtedness, on open account, is first judicially determined.
It is further ordered and decreed that the intervenors be recognized and decreed the owners ia indivisión of one undivided one-half of the property mortgaged and other community assets, subject -to the payment of community debts, free from the grasp of plaintiffs’ special mortgage; and that as heirs of their deceased mother, Mrs. M. A. Oooper, they are creditors of the defendant and of the community to the extent he is ascertained to have been indebted to the deceased at the time of her death; and, as such creditors, they are entitled to be paid out of the defendant’s half interest of the ■ community assets in preference to the plaintiffs as his individual creditors.
It is finally ordered that this cause be reinstated and remanded for the purpose of settlement of the dissolved community, in conformity ■to law, and the views herein expressed, and that appellees be taxed with all costs of both courts.