## VACCARO et al. v. UNITED STATES et al.
### No. 718.

District Court, E. D. Louisiana, New Orleans Division.

June 30, 1944.

Lemle, Moreno & Lemle, of New Orleans, La., for plaintiffs.

Herbert W. Christenberry, U. S. Atty., and Henry C. Vosbein, Asst. U. S. Atty., both of New Orleans, La., for defendants.

BORAH, District Judge.

This action was filed by the widow and heirs of Luca Vaccaro, deceased, to recover an alleged overpayment of federal estate taxes in the amount of $43,711.53, with interest.

The case was tried by the court without a jury on the following stipulated facts:

1. Luca Vaccaro died at his domicile in the City of New Orleans on November 29, 1936, and his succession was opened in the Civil District Court in and for the Parish of Orleans, entitled "Succession of Luca Vaccaro", Number 219,938 of the docket of said court, wherein Mrs. Marie L. Vaccaro, widow of Luca Vaccaro, was recognized and duly qualified as his testamentary executrix.

2. By judgment rendered in said succession on the 11th day of May, 1938, Mrs. Marie L. Vaccaro, widow of Luca Vaccaro,

was recognized as the surviving spouse in community and as such entitled to one-half of all the community property in full ownership.

3. Mrs. Marie L. Vaccaro, in and by the said judgment, was recognized as the usufructuary of the property inherited by virtue of said succession by her children, namely, Lucas A. Vaccaro, Regis F. Vaccaro, Marion Vaccaro and Frances Vaccaro, but by an act before Charles Kohlmeyer, Notary Public, on June 2, 1938, the said Mrs. Marie L. Vaccaro, widow of Luca Vaccaro, renounced her usufruct on that portion of the estate inherited by Lucas A. Vaccaro.

4. The said Mrs. Marie L. Vaccaro, widow of Luca Vaccaro, did not acquire by the said judgment the usufruct on those portions of the estate inherited by Mrs. Mary V. Bertonneau and Mrs. Philomine V. Ferina.

5. The following were recognized as the heirs of Luca Vaccaro, decedent, in the following proportions:

| | |
|---|---|
| Mrs. Mary V. Bertonneau | 7.57504% |
| Mrs. Philomine V. Ferina | 14.20799% |
| Miss Frances Vaccaro | 18.81913% |
| Miss Marion Vaccaro | 17.63178% |
| Lucas A. Vaccaro | 21.52174% |
| Regis F. Vaccaro | 20.24432% |
| | 100.00000% |

6. On December 21, 1943, the plaintiff, Marion Vaccaro, departed this life and, in the matter entitled "Succession of Marion Vaccaro", No. 254,320 of the docket of the Civil District Court in and for the Parish of Orleans, Mrs. Marie L. Vaccaro, widow of Luca Vaccaro, Miss Frances Vaccaro, Lucas A. Vaccaro and Regis F. Vaccaro were recognized as her legatees and sole heirs and as such sent and put into possession of all of her property, so that they have succeeded to any of the rights of the said Marion Vaccaro as plaintiff herein.

7. Pursuant to the provisions of the Revenue Act of 1926, as amended by the Revenue Act of 1932 and the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, pages 145, 482, 664, Mrs. Marie L. Vaccaro, as testamentary executrix, filed an estate tax return with the then Collector of Internal Revenue for the District of New Orleans, and on March 2, 1938, paid to said Collector of Internal Revenue estate taxes in the sum of $83,152.20.

8. Following an audit of the estate tax return, a deficiency in estate taxes in the amount of $64,584.60 was proposed and on August 27, 1940, there was paid to Grady C. Durham, then Acting Collector of Internal Revenue, the sum of $64,584.60, together with interest thereon in the sum of $9,640.54.

9. Said Grady C. Durham ceased to be Acting Collector of Internal Revenue on December 16, 1940, when he was succeeded by Paul H. Maloney as Collector of Internal Revenue, who has since ceased to be Collector of Internal Revenue.

10. The payment of the sum of $64,584.60 was made in accordance with an agreement with Wm. G. Cullen, head of the Southwestern Division, Technical Staff, and duly approved by the Commissioner of Internal Revenue, as more fully shown by copies thereof, attached to the complaint filed herein, marked Exhibits "A", "B" and "C", wherein the right of plaintiffs to sue for the amount claimed herein was especially reserved.

11. Plaintiffs on December 14, 1940 filed a claim for refund for $61,327.01 of the tax so paid, together with interest thereon at the rate of 6% per annum from August 27, 1940. In said claim for refund the corrections claimed related to the inclusion in decedent's gross estate of the amount of $134,840, representing gifts made by decedent to his wife and to that portion of the deficiency resulting from the allowance of only one-half of the cost of administration, including attorney fees, rather than the entire amount of said cost.

12. The Commissioner of Internal Revenue acted upon the said claim for refund by refunding to plaintiffs $7,407.41 with interest $653.98, as shown by the copy of the certificate of over-assessment issued December 31, 1941 and attached to the complaint herein as Exhibit "D". He rejected the claim for refund as to the balance, as shown by his letter of March 13, 1942, attached to the complaint herein as Exhibit "F".

13. There are two questions in this case which must be decided by the Court, one, relating to the gifts aggregating in total $134,840, the other relating to the disallowance of one-half of attorney fees amounting to $37,153.66, executors' commissions amounting to $37,103.66 and other costs of administration amounting to $9,165.54. The parties hereto agree (subject to the approval of the court) that if either of the

questions is decided in favor of plaintiff in this case, judgment shall be held in abeyance for 45 days, the defendant will submit to plaintiffs within 30 days after the court's opinion is known, a computation showing the tax effect of the decision rendered, and if the plaintiffs do not within 15 days thereafter suggest corrections of the figures so submitted, they shall stand and be the basis of the judgment to be entered herein.

14. In the settlement of the succession of the said Luca Vaccaro, attorneys' fees amounting to $37,153.66, executors' commissions amounting to $37,103.66 and other costs of administration amounting to $9,165.54 were paid. One-half of each of these sums was allowed by the Commissioner of Internal Revenue in his computation of the tax exacted by the Collector of Internal Revenue as hereinabove stated and the other half disallowed, in computing said tax.

15. There has been included in the estate of the decedent, Luca Vaccaro, $134,840, representing one-half of the value of gifts made by the decedent, Luca Vaccaro, to his wife, Mrs. Marie L. Vaccaro, which gifts were as follows:

(a) On January 15, 1921, decedent gave to his wife a residence, together with all the furnishings and household effects contained therein. These assets were a part of the community property owned by the decedent and his said wife. This property has been valued at $60,000 for estate tax purposes. That said property was not disposed of prior to the death of Luca Vaccaro.

(b) Prior to the year 1916, decedent gave to his said wife shares of the capital stock of D. H. Holmes Company, Ltd., valued as of the date of decedent's death at $9,680, which shares of stock belonged to the community of acquêts and gains existing between the decedent and his said wife. That said property was not disposed of prior to the death of Luca Vaccaro.

(c) At various dates prior to the year 1920, the decedent made gifts of Liberty bonds to his said wife, in the principal of $200,000, which bonds were purchased by the decedent with community funds and formed a part of the community of acquêts and gains existing between decedent and his said wife. That subsequent to the year 1920, these Liberty bonds were either redeemed or sold and the proceeds thereof invested by Mrs. Vaccaro in other assets

which she retained up to the time of the death of the said Luca Vaccaro.

16. The executors' fees, attorneys' fees and other costs of administration of the estate of Luca Vaccaro, referred to in paragraph 14 above, are based upon the inventory value of the entire community and not based upon the value of one-half of the community owned by Luca Vaccaro.

As set forth in paragraphs 11 and 12 of the foregoing stipulation and in the Commissioner's statement of December 31, 1941, one of the exhibits herein, the plaintiffs' claim for a refund related to the inclusion in the decedent's gross estate of the amount of $134,840 representing gifts made by the decedent to his wife, and to that portion of the deficiency resulting from the allowance of only one-half of the cost of administration, including attorneys' fees, rather than the entire amount of such cost. The Commissioner rejected the plaintiffs' demand for a refund as to all the foregoing items, stating as follows:

"It is the position of this office that the gifts to the decedent's wife are taxable under section 302(a) and (d) of the Revenue Act of 1926, as amended [26 U.S.C.A. Int. Rev.Acts, pages 227, 229], as a transfer in contemplation of death and one in which the decedent retained the right of revocation. This right of revocation is based upon section 1749 of the Civil Code of Louisiana under which gifts between husband and wife are revocable. No additional allowances are made for executors' commissions, attorneys' fees or miscellaneous administration expenses, as those deductions have been determined on a one-half community property basis. To the extent not herein allowed the claims for refund are rejected."

The Commissioner's reference to amounts "herein allowed" was to items not here in dispute.

Of the two questions referred to in paragraph 13 of the foregoing stipulation, the plaintiffs' brief concedes that the first—the inclusion in the decedent's estate of property donated by the husband to the wife—has already been decided adversely to them by the Court of Appeals of this Circuit, in the case of Howard v. United States, 125 F. 2d 986.

The Howard case affirmed this court in holding that under the Louisiana statute providing that all donations made between married persons during marriage, though termed inter vivos, shall always be revoca-

ble, gifts inter vivos made by the decedent to his wife constituted transfers subject at decedent's death to change in enjoyment through the exercise of a power vested in him, within the meaning of the federal estate tax law; and that therefore such gifts were proper subjects of the estate tax. While acknowledging the binding effect of the Howard decision in so far as this court is concerned, the plaintiffs have not abandoned the point, but have merely reserved their argument for the Circuit Court of Appeals.

Accordingly, the sole point argued before this court by the plaintiffs is the Commissioner's disallowance of one-half of $37,153.66 as attorneys' fees, one-half of $37,103.66 as the commissions of the executrix, and one-half of $9,165.54 as other costs of administration.

Under section 303 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 72, as amended by section 805 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 280, 26 U.S.C.A. Int.Rev. Acts, page 643, an estate is permitted to deduct from the gross estate, in the case of a resident, such amounts for funeral expenses, administration expenses, claims against the estate, as are allowed by the laws of the jurisdiction under which the estate is being administered.

The government insists that only one-half of the expenses referred to above are deductible from the taxable estate, since one-half of such expenses were incurred in the administration of the widow's one-half of the community estate.

The plaintiffs, on the other hand, maintain that these amounts, under the law of Louisiana, are charges against the succession of Luca Vaccaro, and are not items to be charged against the community.

■ The Louisiana community law should be considered in determining the tax liability of plaintiffs under section 303 (a). Lang v. Commissioner, 304 U.S. 264, 267, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319, and cases there cited. The law of Louisiana regarding the allocation of expenses of administration in a case of this kind is clear.

■ In Louisiana the wife has a present, vested interest in one-half of the community property and not a mere expectancy. Upon the death of the husband she does not take by inheritance but in her own right as owner. While the husband, as the head of the community, may dispose of the community property without the wife's consent, in doing so he acts as the agent for the community and not as owner of the whole. DeLappe v. Commissioner, 5 Cir., 113 F.2d 48, 50. The community of acquêts or gains terminates upon the death of either spouse. Broussard v. Bernard, 7 La. 216, 222. It therefore follows, both as a matter of law and of logic, that the community, being no longer in esse, cannot be bound for the costs of administration, which by definition are incurred after its dissolution. An estate not in existence cannot contract debts.

■ The Commissioner has apparently overlooked this fundamental principle of Louisiana law and has sought to fasten the costs of administration upon the entire community and to allow only one-half of such costs to be deducted from the taxable estate—the "succession", or the decedent's half of the dissolved community. No part of such costs should be charged to the surviving spouse's share of the community, but the entire amount to be deducted for tax purposes, should be allocated to the decedent's half alone.

In Succession of Lewis, 192 La. 734, 743, 189 So. 118, 121, the court said:

"The trial judge ruled that all costs of the administration should be paid out of the estate of the deceased, and that the community was not liable for any portion thereof. That ruling was correct. See Succession of Pizzati, 141 La. 645, 75 So. 498; Succession of Solis, 10 La.App. 109, 119 So. 768."

This being the law of Louisiana this court holds that all of the charges for the succession that are referred to in paragraph 13 of the stipulation should be borne by the succession, and that no part thereof should be borne by the community or by the surviving spouse in community. It follows that there was error in the disallowance by the Commissioner of Internal Revenue of one-half of those expenses as deductions from the taxable estate of Luca Vaccaro.

### Findings of Fact

The court adopts the stipulated facts as its findings of fact.

### Conclusions of Law

■ 1. The Commissioner of Internal Revenue properly included in the decedent's gross estate the amount of $134,840, representing gifts made by the decedent to

936

his wife. Under the law of Louisiana, such gifts were revocable at all times, and were correctly included in the estate of the decedent, as properly belonging to him and subject to the federal estate tax.

2. The Commissioner erred in disallowing one-half of the following items as deductible from the decedent's taxable estate: Attorneys' fees $37,153.66; commissions of the executrix, $37,103.66; other costs of administration, $9,165.54. Since the community of acquêts or gains terminated upon the death of Luca Vaccaro, it was no longer capable of contracting debts or being charged with expenses. Accordingly, all the costs of administration of the estate should be borne by the decedent's half of the property of the dissolved community, and no part thereof should be charged to the half of the community owned by the surviving spouse. Since the decedent's half of the community property is chargeable with all the costs of administration, it follows that his half of such property should, for tax purposes, receive the benefit of the deduction of the entire amount of such costs from the taxable estate.

In accordance with the provisions of paragraph 13 of the stipulation, the judgment of this court will be left open for a period of 45 days from the filing of this opinion. Within 30 days after such filing, the defendant will submit to the plaintiffs a computation showing the tax effect of the decision rendered herein. If the plaintiffs do not within 15 days thereafter suggest corrections of the figures so submitted, they shall stand and be the basis of the judgment to be rendered herein.