McCALEB, Justice.
 

 This is the second time this case has come before us for consideration. On the first occasion (see 209 La. 224, 24 So.2d 456) the executors were appealing from a judgment sustaining the opposition of the widow in community, Mrs. Helen L. Rat-cliff, to their first annual account. That account stated the net value of the community estate to be $86,379.65. The effect of the decision in the lower court was to increase the net value of the community estate to $144,736.36. On the appeal, we reversed the judgmerit insofar as it maintained the opposition to the item of $35,500 charged against the community as interest paid; thus reducing the net value of the community, as fixed by the district court, to the sum of $109,236.36.
 

 After the case was remanded to the district court, the executors filed their final account which contained the basis for settlement of the community estate. In the proposed settlement Mrs. Ratcliff was found to have a 5.82% interest in the net .assets of the entire (separate and community) estate. Accordingly, she was charged with that percentage of all expenses of administration of the succession and in the same proportion for her share of the federal estate tax. Mrs. Ratcliff, taking the position that she is a creditor of the succession, filed an opposition to the account claiming interest on the amount of the alleged debt and asserted that she is not liable for any portion of the expense of administration or of the federal estate tax paid by the executors. In addition, she maintained that, whereas she is indebted to the community estate for the value ($2,-000) of an automobile delivered to her, as well as in the sum of $6,478.40 for improvements to and advances for her separate estate by the community, the executors have wrongfully charged her for the full amount of this indebtedness on their account and that, being the owner of half of the community assets, she should be charged with one-half only.
 

 After a trial of the opposition, the district judge, finding that Mrs. Ratcliff was
 
 *285
 
 not a creditor of the estate, held her liable for her just proportion of expenses of administration and the federal estate tax and dismissed her claim for interest. He, however, maintained the opposition with respect to the claim that she should be charged with only one-half of her indebtedness to the community. Thereafter, a rehearing was granted to the executors and the judge, upon reconsideration, dismissed the opposition of Mrs. Ratcliff in all respects and approved and homologated the executors’ account as filed. Mrs. Ratcliff has appealed from the adverse decision.
 

 The appeal involves questions of law and fact. The question of law is founded upon the contention of Mrs. Ratcliff that she is a creditor of the separate estate of her husband and, hence, entitled to legal interest on the amount which the executors propose to pay and that, being a creditor, she is not liable for any part of the costs of administration based upon the indebtedness due her or for any part of the federal estate tax figured upon such indebtedness. We direct our immediate attention to this proposition.
 

 Counsel for Mrs. Ratcliff open the argument in their brief with this statement: “We cannot too often state or emphasize the fact that at the death of Ernest R. Rat-cliff,
 
 the community owned no property other than a miscellaneous lot of household furniture and $1.59 in the bank.
 
 The community, however, was a creditor of the separate estate in a large sum, the amount of which had never been liquidated.” (Italics are those of counsel.)
 

 Buttressed by this premise, counsel make a most appealing argument to the effect that Mrs. Ratcliff should not be required to pay any part of the expenses of administration or taxes and that she is entitled to interest on the amount the executors propose to pay her.
 

 In our view, the contention cannot prevail because it is based upon the fallacious notion that Mrs. Ratcliff 'or the community estate is a creditor of Ratcliff’s separate estate when no such relation (debtor and creditor) actually exists either in law or in fact. When Ratcliff and the opponent were married in 1937, the former was a comparatively wealthy man. The marriage superinduced the existence of a community of acquets and gains, Civil Code, Article 2399, and thereafter all property acquired by either spouse during the marriage formed part of the community, Civil Code, Article 2402. Moreover, under the provisions of Article 2402, the fruits or income of the separate property of the husband fell into the community for the article declares that the community “consists of the profits of all the effects of which the husband has the administration and enjoyment * *
 

 See Succession of Goll, 156 La. 910, 101 So. 263, and Peters v. Klein, 161 La. 664, 109 So. 349.
 

 In the instant case the entire community, with the exception of miscellaneous personal property, is composed of the income from
 
 *286
 
 Ratcliff’s separate property. There was never an indebtedness by his separate estate to the community estate for the amount of this income. The income from his separate estate became community property from the moment Ratcliff received it. And he received it in his capacity as head and master of the community and not for his separate estate.
 

 Upon dissolution of the marriage by Ratcliff’s death, a presumption arose that all property possessed by either spouse belonged to the community, Civil Code, Article 2405. However, it is conceded in this case that most of the property belonged to the separate estate of the husband and that, except for miscellaneous personal property, the entire community estate consists of income derived from the separate estate. It is not correct to say that the separate estate is indebted to the community for this income. On the contrary, the community owned it. At the date of death, the community was divided into two equal portions, Civil Code, Article 2406, and Mrs. Ratcliff became the owner of a one-half interest therein. She was never a creditor in any sense. However, although her interest as an owner in the community attached from the moment of its dissolution, she could not demand delivery until the payment of the community debts. Succession of Dumestre, 42 La.Ann. 411, 7 So. 624; Tugwell v. Tugwell, 32 La.Ann. 848 and Tomme v. Tomme, 174 La. 123, 139 So. 901.
 

 Since Mrs. Ratcliff is the owner of a community interest in her husband’s succession and not a creditor of his separate estate, it follows that she is not entitled to interest on the funds due from the succession and that she is liable for her proportionate share of the expenses of administration. Likewise, inasmuch as her community interest was subject to the federal estate tax under the provisions of section 402(b) of the Revenue Act of 1942, amending section 811(e) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, 811(e) (2),
 
 [1]
 
 it seems manifest that she is liable for her proportionate share of the tax paid by the executors.
 

 On this phase of the matter, counsel for Mrs. Ratcliff contend principally that she is not responsible for any part of the federal estate tax'because she is a creditor of her husband’s estate. But, above this, they suggest that, since the courts must resort to equitable principles in determining how the tax burden shall be distributed among those who share in the taxed estate,
 
 [2]
 
 
 *287
 
 the only just way to evolve the proportion ■of tax to be borne by the widow in community, in cases where the husband leaves a large separate estate, is to compute the tax which would have been due on the community alone and apportion it equally between the husband and wife. This postulate is best explained by an example given by counsel. They say “suppose a man die, with a separate estate of $1,000,000, and a community of $50,000. The total tax upon an estate of $1,000,000 is $251,700. The total tax itpon an estate of $1,050,000 would he $19,500 additional, or $271,200. The total tax on $50,000 estate is $4800. The ■$1,000,000 estate pays a tax of more than 25%; the $50,000 estate a tax of 10%. We are unable to find any semblance of equity in the suggestion that there should be imposed upon one interested in the smaller estate a tax measured by rates applicable to the larger one.”
 

 We think that the failure of counsel to discover the justice in requiring that the tax be shared proportionately by all emanates from their unwillingness to recognize that there is but one estate for federal taxation purposes and that the tax is levied on the whole, i. e. — the community and separate property. This being so, equitable principles demand that the burden be divided between all persons sharing in the estate in accordance with their respective interests. There is no just way to apportion the tax burden by measuring it by different rates. Counsel give illustrations of a small community estate and a large separate estate in their attempt to demonstrate that it is unfair to load the community estate with the high rate of taxation resulting from the addition of the separate estate. No examples are given, however, of a very large community estate and a small separate estate. What happens in such cases ? May the heirs of the husband’s separate estate deny their liability for their proportionate part of the entire tax on the ground that, if it had not been for the community estate, they would have paid a much smaller tax? We think not. To require the widow in community to bear the larger rate of the tax in such case would be to impose upon her a portion of the tax' resulting exclusively from the transmission of property to the heirs. The reverse is true in this case. The widow in community cannot require the heirs of her husband to pay more than their just proportion of the increased rate of taxation brought about by the addition of her community interest to the total estate for taxation purposes.
 

 Disposal of thé foregoing questions of law leaves only for consideration three disputed questions of fact which, for purposes of discussion, may be treated as one. One of the assets of the community was an automobile valued at the sum of $2,000. This car was turned over to Mrs. Ratcliff by the executors. In addition, it appears that Mrs. Ratcliff became indebted to the community estate in the sum of $2,478 for certain property purchased during the mar
 
 *288
 
 riage for her separate estate. She also owes the community $4,000 for payments made on account of a note referred to as the “Roselli” note. These debts are admitted but her counsel maintain that, in the proposed settlement of the community estate, the executors have wrongfully charged her with the frill amount of these debts. They claim that she should only be charged with one-half of the total amount of the debts for the reason that, as surviving widow in community, she is owner of one-half.
 

 A perusal of the account satisfies us that the contention is not well founded. In the list of assets which revealed a net community estate of $86,379.55 (subsequently increased to $109,236.36), there is included the Packard automobile valued at $2,000, and the indebtedness of Mrs. Ratcliff of $6,474.80 for payments on the “Roselli” note and the advance for the Cambridge real estate. Hence, she is given credit for a one-half ownership in these assets although they are not actually in the hands of the executors for distribution. Consequently, the executors have properly deducted from Mrs. Ratcliff’s share in the net community estate the total amount of her indebtedness to the estate and also the value of the Packard automobile which she has already received. That the method used by the executors is correct and gives Mrs. Ratcliff all to which she is entitled will be readily seen by use of the following simple example:
 

 A man dies leaving a community estate with pash assets of $150,000. In addition to this, it is disclosed that his widow is indebted to the community in the sum of $50,-000. The inventory of the community estate will be $200,000, i. e., $150,000 cash and $50,000 debt of the widow. Assuming that there are no succession debts, the widow will receive $50,000 for the 'reason that her share is $100,000, less the $50,000 which she owes to the community estate.
 

 The judgment appealed from is affirmed.
 

 O’NIELL, C. J., concurs in the decree.
 

 [1]
 

 Constitutionality upheld in Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116.
 

 [2]
 

 The federal statute leaves it to the several states to determine how the tax burden shall be distributed among those who share in the taxed estate. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 108, 142 A.L.R. 1131. Since Louisiana bas no express law on the subject, the court must apply equitable principles under Article 21 of the Civil Code.