**75 So.2d 221**

**Succession of William G. HELIS.**

**No. 41777.**

July 2, 1954.

Rehearing Denied Oct. 5, 1954.

Ralph H. Fishman, New Orleans, for defendant-appellant.

Charles D. Marshall, New Orleans, Milling, Saal, Saunders, Benson & Woodward, New Orleans, of counsel, for plaintiffs-in-rule and appellees.

FOURNET, Chief Justice.

Thomas S. Buckley, State Inheritance Tax Collector for the Parish of Orleans, is appealing from a judgment of the district court fixing the inheritance tax due the State of Louisiana by the estate of William G. Helis, deceased, at the sum of $115,444.20, instead of $123,573.16.

William G. Helis died testate leaving an estate in Louisiana consisting entirely of his half interest in the community of acquets and gains existing between him and his surviving widow, the community in its entirety being appraised at $9,817,940, with outstanding current liabilities aggregating $713,180.-51. In his will he left his estate to his four major children, subject to the usufruct of his widow, which usufruct she renounced. William G. Helis, Jr., qualified as the testamentary executor of his father and, as such, continued to administer the business in much the same manner as it had been conducted previously.[1] In due time he filed an account of his administration and ruled the inheritance tax collector to show cause why the amount of such taxes due the state should not be fixed at $115,444.20. In arriving at this sum, he deducted from the decedent's share of the community all costs incurred in administering the entirety of that property, including the fees of the attorneys and the executor, which were admittedly computed or measured by the appraised value of the whole of the community.

The tax collector contested the rule on the ground that under the jurisprudence[2] only half of the administration costs were legally chargeable to the decedent's share of the community since the surviving widow is liable for her proportionate share of these expenses, and, accordingly, the tax due the state is $123,573.16, or a difference of $8,-128.96. He likens the administration of the community of acquets and gains necessitated by the death of the husband to the liquidation of a tremendous business partnership necessitated by the death of one of the partners.

The executor contends the cases relied on are not controlling since (1) the first three were decided prior to Phillips v. Phillips, 160 La. 813, 107 So. 584, at a time when it was thought the wife had only an inchoate

[1.] The inventory of the estate discloses it consisted of cash, notes, accounts receivable, investments, leases and royalties on producing and non-producing lands, machinery and equipment for the drilling of wells, etc.

[2.] Succession of Webre, 49 La.Ann. 1491, 22 So. 390; Sims v. Billington, 50 La. Ann. 968, 24 So. 637; Succession of Bothick, 52 La.Ann. 1863, 28 So. 458; and Succession of Ratcliff, 212 La. 563, 33 So.2d 114.

or residuary and not a present vested title or interest in the community;[3] (2) the Ratcliff case was decided on purely equitable principles under the provisions of the Federal Revenue Law of 1942, 26 U.S.C.A. § 811(e) (2), that ignored the wife's vested title to a half of the community and required that inheritance taxes due on the husband's estate be measured by the value of the entire community, and this case is no longer authority since that law has been repealed; (3) in any event, decedent's estate was administered solely for the purpose of having the inheritance taxes due the government calculated, since only current liabilities were outstanding and there were ample funds to insure their orderly discharge. It is urged that for this reason the community interest of Mrs. Helis should not be burdened with any of the costs incurred in determining these amounts.

■■ Despite loose expressions in some of the decisions to the contrary, ever since Dixon v. Dixon's Ex'rs, 4 La. 188, was decided in 1832, title to half of the community property from the very moment of its acquisition is, under our civil law system, vested in the wife, irregardless in whose name acquired. Phillips v. Phillips, 160 La. 813, 107 So. 584, Succession of Wiener, 203 La. 649, 14 So.2d 475, Betz v. Riviere, 211 La. 43, 29 So.2d 465, and Fleming v. Fleming, 211 La. 860, 30 So.2d 860. And while it is true the jurisprudence is to the effect[4] that the cost of administering a community estate, including the fee of the attorneys, is to be borne by the decedent's share of the community and the wife's share equally, as is true when an ordinary commercial partnership is under liquidation, the administration of the community estates in the authorities relied on by the collector was necessary for the settlement of the affairs of the entire community, that is, for the purpose of determining the amounts of and liquidating the obligations of the community, and the division, thereafter, of the net assets equally between the two spouses, or their estates. In the instant case the evidence in uncontroverted that an administration of the community was totally unnecessary except for

3. Contrary to the contention of the executor, the authorities relied on by the state were not decided at a time when it was thought the wife's interest in the community was merely residuary, as the early cases of Dixon v. Dixon's Ex'rs, 4 La. 188; Theall v. Theall, 7 La. 226; Succession of Marsal, 118 La. 212, 42 So. 778; Succession of May, 120 La. 692, 45 So. 551; Beck v. Natalie Oil Co., 143 La. 153, 78 So. 480; and Ramsey v. Beck, 151 La. 190, 91 So. 674, all decided prior to the Phillips case, attest. However, there is no reference to these previous cases in the early authorities relied on by the state, and the language therein used would indicate the wife's inchoate interest was considered by the court to be important.

4. The only decision to the contrary—Succession of Lewis, 192 La. 734, 189 So. 118—was decided without reference to the earlier authorities relied on by the state.

the purpose of facilitating the computation and payment of the inheritance taxes due by the estate of the decedent alone under the very complicated federal inheritance tax laws. Consequently, we do not think the authorities relied on by the tax collector are controlling under the peculiar facts of this case.

The fact that for computation purposes the appraised value of the entire community estate was used as a base in calculating the deductible fees is immaterial. This was by specific agreement, and admittedly in accordance with minimum fees authorized by the bar association. Moreover, the testimony is to the effect that these figures are not final since the fees of the attorneys are to be ultimately fixed on the basis of services rendered, with provision for submission of the matter to the bar association and the court for approval, if that step becomes necessary. Consequently, inasmuch as the collector is not here contending these amounts are incorrect or excessive, it is a matter with which he has no concern.

For the reasons assigned, the judgment appealed from is affirmed.

LE BLANC, J., absent.

HAWTHORNE, Justice (dissenting).

I am in full accord with the principles of law expressed and set forth in the majority opinion. I disagree, however, with the conclusion that the facts of this case do not justify the application of those principles, and I am of the belief that the authorities relied upon by the tax collector are controlling here.

I therefore respectfully dissent.

McCALEB, Justice (dissenting).

The majority opinion, while acknowledging that the cost of administering a community estate, including the attorney's fee, is chargeable to "the decedent's share of the community and the wife's share equally", nevertheless holds in this case that all expenses of administration shall be borne by the decedent's share of the community because an administration of the community "was totally unnecessary except for the purpose of facilitating the computation and payment of the inheritance taxes due by the estate of the decedent alone under the very complicated federal inheritance tax laws." I cannot subscribe to this view.

The community of acquets and gains may be dissolved in two ways: by death of one of the spouses or by judicial action. During the existence of the community, each spouse has a present property interest in one-half of the community, the wife's interest, however, being subject to the administration and control of the husband as head and master. Phillips v. Phillips, 160 La. 813, 107 So. 584; Succession of Wiener, 203 La. 649, 14 So.2d 475. Upon its dissolution by death, title to one-half of the property vests at once in the survivor and the other half in the heirs of the deceased, subject to any community

debts.[1]  Webre v. Lorio, 42 La.Ann. 178, 7 So. 460; Thompson v. Vance, 110 La. 26, 34 So. 112.  Of course, if the community owes no debts, the joint owners may divide the property among themselves without formal administration.  Burton v. Brugier, 30 La.Ann. 478; Succession of Welch, 36 La. Ann. 702; Succession of Dumestre, 42 La. Ann. 411, 7 So. 624.  And, even if there are debts, an administration is not obligatory unless the creditors demand it.  Succession of Keppel, 113 La. 246, 36 So. 955; Dickson v. Dickson, 36 La.Ann. 453; Newman v. Cooper, 46 La.Ann. 1485, 16 So. 481 and Harman & Stringfellow v. LeGrande, 151 La. 253, 91 So. 726.

On the other hand, if there are community debts, the community maintains a fictitious existence under the administration of the husband or the husband's estate until the outstanding obligations are settled.  Succession of Dumestre, supra; Tomme v. Tomme, 174 La. 123, 139 So. 901; Succession of Ratcliff, 212 La. 563, 33 So.2d 114 and Washington v. Palmer, 213 La. 79, 34 So.2d 382.  The reason for this rule respecting the fictitious existence of the community is that, since the husband is personally and individually liable for all community debts, he or his succession should have control of the community property until the debts are liq-

uidated.  See Succession of McLean, 12 La. Ann. 222.  Therefore, settlement of the husband's succession includes and carries with it the rights of the wife insofar as her community interests may be involved.  Ibid; Succession of Lamm, 40 La.Ann. 312, 4 So. 53; Succession of McCan, 49 La.Ann. 968, 22 So. 225 and Succession of Keppel, supra.

Under Article 2410 of the LSA–Civil Code, the wife has the privilege of exonerating herself from liability for the debts contracted during the marriage by renouncing the community.  She may also accept it under the benefit of inventory and this acceptance has been held to be merely an expression of her consent to receive the residue of the community, if any, after the debts have been paid.  Phillips v. Phillips, supra.

Thus, it clearly appears from the foregoing authorities [2] that, when there is an administration of the estate, the costs attendant thereto are chargeable to the entire community because the surviving wife obtains the benefit of having her residuary interest in the common property ascertained and liquidated.  Hence, it matters not, in my opinion, whether the administration was conducted for the purpose of facilitating the computation and payment of inheritance taxes due by the decedent or not—for, in

---

1. The phrase "subject to any community debts" has been explained to mean that, although title is immediately vested in the survivor and the heirs, the right of possession and dominion of their respective shares of the community is suspend-

ed until the debts are paid.  See Factors' & Traders Ins. Co. v. Levi, 42 La.Ann. 432, 7 So. 625.

2. Except Succession of Lewis, 192 La. 734, 189 So. 118, which, as intimated by the majority opinion, is plainly wrong.

any case, the surviving wife has obtained the benfit of an administration and the ultimate ascertainment of her residuary interest in the community, which she will receive unburdened by debt. Indeed, the administration being an accomplished fact, the reason for it is, to my mind, immaterial.

Apart from this, I entertain grave doubt that a succession of this magnitude, having assets of nearly $10,000,000 and current debts aggregating $713,180.51, could have been readily transmitted to the heirs and the surviving spouse without an administration. And this, despite the °contrary opinion expressed by the executor who, paradoxically enough, has assessed his commission (two and one-half percent under Article 1683 of the LSA–Civil Code) on the entire community estate.[3] The record shows that the debts were paid during the course of administration and the community benefited therefrom to that extent. It is also shown that there were 198 separate filings in the succession proceedings as of the date of the trial of the rule to fix inheritance taxes. These filings involved petitions for authority to carry on operating businesses; carry out contractual commitments; enter into agreements; sell properties; grant mineral leases and sell stocks at private sale. It is perfectly apparent that all of these transactions were necessary acts of administration and that they redounded to the benefit of the community.

I respectfully dissent.

3. The attorneys' fees are calculated on the whole estate under the New Orleans Bar Association's minimum fee provisions. These charges have unquestionably been formulated by the Bar Association on the basis of the applicable jurisprudence.