Mrs. Nell Steere McCULLOUGH

v.

UNITED STATES of America.

Civ. A. No. 4725.

United States District Court
W. D. Louisiana, Shreveport Division.

Oct. 17, 1955.

Elias Goldstein, Shreveport, La., for plaintiff.

T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Edward W. Rothe, Dept. of Justice, Washington, D. C., for defendant.

HUNTER, District Judge.

Taxpayer, executrix and sole beneficiary of the will of her deceased husband, is suing to recover $1,709.45 in estate taxes allegedly overpaid. The case was submitted to the court on the following stipulated facts:

1. Plaintiff's husband, John S. McCullough, died testate on August 28, 1951, a resident of Shreveport, Louisiana. Plaintiff was designated executrix of his will and was also designated his universal legatee.

2. On June 25, 1952, plaintiff, as executrix, filed a federal estate tax return and paid a federal estate tax of $253,-135.28.

3. On December 15, 1952, plaintiff, as executrix, filed a claim for refund of estate tax allegedly overpaid in the amount of $26,967.25 on the theory that the value of certain stock owned by decedent in Canadian corporations had been included in his gross estate on the estate tax return whereas, subsequent to the filing of the estate tax return, the estate had been required to pay a Canadian estate tax on the value of the shares which decedent owned in Canadian corporations.

4. In a report dated May 20, 1953, Estate Tax Examiner W. H. McCracken considered plaintiff's claim for refund

(filed on December 15, 1952) and made a tentative audit of the estate tax return, allowing a credit for Canadian death duties which had been paid, making certain adjustments to the return, as filed, which are not here in issue, but disallowing, as a deduction, expenses of administration, totalling $7,391.66.

5. (a) Decedent's separate property had a value of $689,616.33 and the community property owned by decedent and plaintiff had a value of $1,245,565.72 (of which decedent's one-half interest would be $622,782.86).

(b) According to the estate tax return, decedent's separate debts totalled $9,738.97 and his share of community property debts totalled $154.95.

(c) At the time of the death of Mr. McCullough there were on deposit in his name with The First National Bank of Shreveport funds in the sum of $45,922.-51, which funds were owned by the community. From these funds the executrix of the decedent's will paid the debts of the community and of the succession.

6. In the estate tax return, the following deductions had been claimed:

| | |
|---|---|
| Funeral expenses | $ 1,279.65 |
| Expenses of last illness (one-half community debt) | 65.00 |
| Attorneys' fees | 20,000.00 |
| Miscellaneous administrative expenses | 2,968.19 |

In his tentative audit, the estate tax examiner allowed the deductions, as claimed, for funeral expenses and expenses of last illness, but allowed only $13,563.57 of the claimed deduction for miscellaneous administrative expenses on the theory that no deduction (for estate tax purposes) was allowable for that proportion of the attorneys' fees and miscellaneous administrative expenses which was attributable to the administration of the one-half interest in the community property owned by plaintiff, as surviving wife of decedent. He determined the proportion of allowable expenses according to the following formula:

$$\frac{\text{Separate property} + \frac{1}{2}\text{ community property}}{\text{Separate property} + \text{all community property}} \times \frac{\text{Claimed deduction}}{1}$$

Using this formula, the amount of allowable attorneys' fees was computed as follows:

$$\frac{\$689,616.33 + \$ 622,782.86}{\$689,616.33 + \$1,245,565.72} \times \frac{\$20,000}{1} = \$13,563.57$$

Allowable miscellaneous expenses of administration were computed as follows:

$$\frac{\$689.616.33 + \$ 622,782.86}{\$689,616.33 + \$1,245,565.72} \times \frac{\$2,968.19}{1} = \$2,012.96$$

Therefore, of the total of $22,968.19 claimed as deductions for legal and miscellaneous administration expenses, the agent allowed $15,576.53, but disallowed $7,391.66.

7. On July 10, 1953, plaintiff, as executrix, filed a protest against that portion of the estate tax examiner's report which proposed to disallow the total of $7,391.66 (erroneously stated as $7,391.-65 in the protest) as a deduction for legal and miscellaneous administration expenses. A copy of this protest is attached hereto as Exhibit "A".

8. On December 16, 1953 and February 25, 1954, plaintiff filed claims for refund in the respective amounts of $4,-287.53 and $6,002.62, alleging that the $7,391.66 (erroneously stated to be $7,-439.71 in both claims) had been errone-

ously disallowed as a deduction for legal and miscellaneous administrative expenses.

9. According to the estate tax examiner's report, plaintiff was entitled to a refund of $19,445.26, rather than the $26,967.25 claimed in the claim filed December 15, 1952, and that sum was refunded to plaintiff on or about March 15, 1954. If the $7,391.66 disallowed as a deduction for legal and miscellaneous administration expenses by the estate tax examiner's report were, as a matter of law, an allowable deduction, plaintiff would be entitled to an additional refund of $1,709.45.

10. Plaintiff did expend $20,000 for attorneys' fees and $2,968.19 for miscellaneous expenses.

### Statute and Regulations Involved

Internal Revenue Code of 1939:

"§ 812. Net estate

"For the purpose of the tax the value of the net estate shall be determined * * * by deducting from the value of the gross estate—

\* \* \* \* \*

"(b) * * * Such amounts—

\* \* \* \* \*

"(2) for administration expenses,

\* \* \* \* \*

as are allowed by the laws of the jurisdiction * * * under which the estate is being administered * * *." 26 U.S.C. 1952 ed., Sec. 812.

Treasury Regulations 105, promulgated under the Internal Revenue Code of 1939:

Sec. 81.32 *Administration expenses.*—The amounts deductible from the gross estate as "administration expenses" are such expenses as are actually and necessarily incurred in the administration of the estate; * * * Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as de-

ductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses. * * *

### Question Presented

The only issue in this case is whether these amounts (a) represent expenses incurred in the administration of *decedent's estate* (and, therefore, are allowable deductions, in full, for estate tax purposes) or (b) represent, in part, expenses incurred in the administration of plaintiff's share of the community property (and, therefore, are allowable deductions, for estate tax purposes, only to the extent they represent expenses chargeable against the estate as such, rather than against plaintiff's share of the community property). If they are deductible in full plaintiff is entitled to a refund of $1,709.45; if deductible only in part, that part has already been determined by the formula described in paragraph 6 and allowed as a deduction, so that plaintiff would be entitled to no refund in this action.

### Discussion

The precise question here, as the government recognizes, was decided adversely to it in Vaccaro v. U. S., D.C.E.D.La. 1944, 55 F.Supp. 932[1], 935. There the court said:

"The community of acquêts or gains terminates upon the death of either spouse. * * * It therefore follows, both as a matter of law and of logic, that the community, being no longer in esse, cannot be bound for the costs of administration, which by definition are incurred after its dissolution. An estate not in existence cannot contract debts."

Government counsel assert that this reflects a basic misconception of the theory of dissolution of the marital community under Louisiana law and points out that if this were the law of Louisiana, it has certainly been superseded by the decision of the Louisiana Supreme

---

1. This decision was affirmed by the Court of Appeals for the Fifth Circuit, 149 F.2d 1014, but the point at issue was not involved in the appeal.

Court in Succession of Ratcliff, 1947, 212 La. 563, 33 So. 114.

The government's position is that where there is an administration of the estate, *the costs attendant thereto are chargeable to the entire community because the surviving wife obtains the benefit of having her residuary interest in the common property ascertained and liquidated.* Indeed, the administration being an accomplished fact, the reason for it, they say, is immaterial. This contention is based on the premise that when the husband dies first in Louisiana, the administrator of the husband's succession is required to take possession and administer the wife's half of the community along with that of the husband. This is just not the law of Louisiana.[2] The administrator of the husband's succession has no authority over the wife's half of the community *where there are no substantial community debts and no necessity for the liquidation of the community.* When Mr. McCullough died, Mrs. McCullough acquired the power of full disposition of her half of the community and might have sold it, mortgaged it, or dealt with it as she pleased.

The proration of expenses of administration between the separate estate of a deceased Louisiana citizen and the marital community between decedent and his surviving widow is authorized by several decisions of the Supreme Court of Louisiana in cases where the facts were altogether different from the facts of the instant case. The essential difference is that in those cases in which the Supreme Court of Louisiana saddled the marital community with a portion of the expenses of administration of the husband's succession, the marital community itself was heavily involved and the administrator of the husband's succession was required to liquidate the community before he could complete his

administration. By liquidating the community is meant payment of all community creditors and the sale of sufficient community property to provide means to this end, and also a settlement of any arguments as to what is community property and what is separate property in cases where differences arise between the surviving widow in community and the heirs of her husband. Here, the total community debt was $309.90, and the community had cash on hand in excess of $45,000; and here, too, the widow was the sole legatee and the sole heir. We cannot distinguish the instant case from one recently decided by the Supreme Court of Louisiana, Succession of Helis, 226 La. 133, 75 So.2d 221, 222. The following quotation from that case is decisive and controlling here:

"Despite loose expressions in some of the decisions to the contrary, ever since Dixon v. Dixon's Ex'rs, 4 La. 188, was decided in 1832, title to half of the community property from the very moment of its acquisition is, under our civil law system, vested in the wife, irregardless in whose name acquired. Phillips v. Phillips, 160 La. 813, 107 So. 584; Succession of Wiener, 203 La. 649, 14 So.2d 475; Betz v. Riviere, 211 La. 43, 29 So.2d 465, and Fleming v. Fleming, 211 La. 860, 30 So.2d 860. And while it is true the jurisprudence is to the effect that the cost of administering a community estate, including the fee of the attorneys, is to be borne by the decedent's share of the community and the wife's share equally, as is true when an ordinary commercial partnership is under liquidation, the administration of the community estates in the authorities relied on by the collector was necessary for the settlement of the affairs of the en-

2. It is true that in Louisiana *if there are community debts,* the community maintains a fictitious existence under the administration of the husband or the husband's estate until the outstanding obligations are settled. The reason for this

rule respecting the fictitious existence of the community is that since the husband is personally and individually liable for all community debts, he or his succession should have control of the community property until the debts are liquidated.

tire community, that is, for the purpose of determining the amounts of and liquidating the obligations of the community, and the division, thereafter, of the net assets equally between the two spouses, or their estates. *In the instant case the evidence is uncontroverted that an administration of the community was totally unnecessary except for the purpose of facilitating the computation and payment of the inheritance taxes due by the estate of the decedent alone under the very complicated federal inheritance tax laws. Consequently, we do not think the authorities relied on by the tax collector are controlling under the peculiar facts of this case.*"

The government concedes that Helis, supra, does support the proposition of Louisiana law contended for by plaintiff, viz.: that the widow's share of the community estate is not chargeable with any portion of administrative expenses where there is no necessity for administration of the community as such, but seeks to avoid the effect thereof by insisting that there is nothing in the stipulated facts here to show whether or not an administration was necessary. We do not agree.

It is appropriate to note a recent tax court decision (Estate of Thomas E. Gannett, Ella J. Gannett, Administratrix v. Administrator) filed July 14, 1955 and reported in C.C.H. Tax Reporter, beginning with page 2740. There was presented exactly the same question that is presented here, which is whether or not the Commissioner was justified in making an allocation of administrative expenses between the succession of the deceased husband and the surviving wife's share of the community property. This is what the Tax Court said:

"Respondent having abandoned his claim respecting decedent's insurance, we have for consideration only the deductibility of the one-half of the administration expenses, consisting primarily of attorneys, accountants' and notarial fees, which respondent failed to allow. The total amount is not in dispute, but respondent presses his disallowance on the ground that the whole community estate was administered and hence that petitioner's share of the expenses was only one-half.

"Whatever may be the rule as to general administration expense where either the entire estate is the subject of administration, see Estate of Oscar Levy, 42 B.T.A. 991 (Dec. 11,341), or the parties agree to an apportionment of the administration costs, see Lang's Estate v. Commissioner, 9 Cir., 97 F.2d 867 [38–2 USTC § 9403], the latter authority, which has several times been cited with approval, see, e. g., Austin Leigh Claiborne et al., Executors, 40 B.T.A. 722 [Dec. 10,-841], requires that expenses peculiarly applicable to the decedent's estate be allocated entirely to it.

"Thus in the Lang case, supra, attorney's fees due 'in connection with the settlement and adjustment of the tax liability of the Federal and state estate taxes' were held to be deductible in full: 'We hold that the Board was in error in not permitting the full deduction of these items. *It is immaterial that the expense was incurred in the course of the administration of the entire community estate.* They were incurred solely for and on behalf of that portion of the community estate which was subject to decedent's disposition and which made up the "estate" subject to tax by the state and federal governments. The portion of the community automatically distributed to the decedent's wife, and which is no part of the gross estate under the Revenue Act, was unconcerned with such tax liability and derived no benefit from the services rendered and expenses incurred.'

"The present facts are even stronger. The parties have stipu-

lated that "The only purpose for the administration of the estate * * * was to pay state and federal inheritance taxes." And while it is true the Lang case was decided under the community property law of the State of Washington, as we said in Estate of Oscar Levy, supra, 'No contention is made by the parties that the Louisiana law on this point is different.' And see Vaccaro v. United States, D.C.E.D. La., 55 F.Supp. 932 [44–2 USTC § 10,129], affirmed [5 Cir.], 149 F.2d 1014 [45–2 USTC § 10,213]." (Emphasis ours).

While the Gannett and Vaccaro cases are both directly adverse to the government's contention here, we prefer to base our decision, which must be against the government's contention, on Helis, supra. The Gannett case is cited to show how even the common law lawyers who sit in the present tax court construe the Louisiana jurisprudence.

### Conclusions of Law

■ (1) In Louisiana, the widow's share of the community estate is not chargeable with any portion of administrative expenses where there is no necessity for administration of the community as such. There is no necessity for an administration where the widow is the sole legatee and the sole heir, with cash on hand in excess of $45,000 and the community debt only $309.90.

(2) The amounts spent for attorneys fees and miscellaneous expenses represent expenses incurred in the administration of decedent's estate, and therefore are deductible in full.

Accordingly, there should be a judgment in favor of the petitioner and against the United States in the full sum of $1,709.45, together with interest thereon at the rate of 6% per annum from June 25, 1952, until paid.

Thus Done and Signed in Chambers at Lake Charles, Louisiana, on this the 14th day of October, 1955.