288 So.2d 413 (1973)
Succession of Thomas Vincent SHARP.
No. 5600.
Court of Appeal of Louisiana, Fourth Circuit.
December 20, 1973.
Rehearing Denied February 6, 1974.
Writ Refused March 15, 1974.
*414 Robert E. Redmann, New Orleans, for appellant.
James D. Rives, Jr., New Orleans, Thomas J. Kliebert, Gramercy and Joseph V. Ferguson, II (James D. Rives, Jr.) New Orleans, for appellee.
Before LEMMON, STOULIG and SCHOTT, JJ.
LEMMON, Judge.
Mrs. Ellen R. Sharp has appealed from a judgment homologating a tableau of distribution filed by the executor in her husband's succession proceedings.
After Mr. Sharp died in February, 1970, the executor commenced an administration of the succession. The estate consisted primarily of immovable property, homestead and savings accounts, and cash, all of which were community property. Mr. Sharp's share of the community was left to special and universal legatees.
Immediately upon qualification, the executor by court authority paid the expenses of the funeral and the last illness and reinvested the funds from the homestead and savings accounts in U. S. Treasury Bills returning a higher rate of interest.
In January, 1972 Mrs. Sharp filed a motion to compel the executor to terminate the administration and to file an account. Shortly thereafter, the executor paid the additional estate tax assessment and filed an interim account.[1]
In April, 1972 Mrs. Sharp moved to be immediately placed in possession of her share of the cash and the treasury bills (which had matured two months earlier), and of the immovable property to which she was entitled. The executor then filed a supplemental account and a proposed tableau of distribution, requesting notice publication of the tableau and eventual homologation. The executor served copies of the account and the tableau on the legatees by registered mail, but requested service by the deputy sheriff on Mrs. Sharp.[2]
Notice of the filing of the tableau of distribution was published in the official parish journal on May 13, 1972. The deputy sheriff did not effect service on Mrs. Sharp, however, until May 19, 1972.[3]
*415 When no opposition to the tableau of distribution was filed within ten days of the May 13 publication, the executor obtained a judgment homologating the tableau of distribution on Wednesday, May 24, 1972, but took no action with respect to the account.
On Monday, May 29, 1972 (the third judicial day after the rendition of judgment), Mrs. Sharp filed a rule to show cause why the judgment homologating the tableau of distribution should not be set aside. The trial court dismissed the rule, and Mrs. Sharp appealed suspensively from the May 24 judgment of homologation.
The executor moved to dismiss the suspensive appeal. This court held that the rule to set aside the judgment of homologation was in substance an application for a new trial which had been timely filed, and that the suspensive appeal taken within 15 days of the denial of the motion was timely. Succession of Sharp, 271 So.2d 917 (La.App. 4th Cir. 1973).
On appeal Mrs. Sharp first contends that the judgment homologating the tableau of distribution is null (1) because it was rendered less than ten days after service of the notice stating that she had ten days within which to oppose the tableau, and (2) because, under C.C.P. art. 2004, the misleading notice to her constituted ill practice by the executor or by the court personnel.
Inasmuch as Mrs. Sharp's counsel has detailed in brief and oral argument the basis upon which he would oppose the tableau of distribution if we annulled the judgment of homologation, and since we conclude that Mrs. Sharp is entitled in this appeal to the same relief she would seek by opposition, it is not necessary that we pass upon the nullity contentions.[4]
The principal issue is whether any portion of the attorney's fee and the executor's fee should be charged to Mrs. Sharp's half of the community. She contends the administration was unnecessary, or in any event was of no benefit to her, even if necessary for the stated purpose of having the estate taxes determined and paid.
Generally, the expense of administering a community estate is borne equally by the decedent's share and the surviving spouse's share. Succ. of Bertrand, 123 La. 784, 49 So. 524 (1909); Succ. of Ratcliff, 212 La. 563, 33 So.2d 114 (1947). The usual purpose of an administration, however, is to determine and liquidate the obligations of the community in order to determine the net assets and to distribute them equally between the surviving spouse and the heirs and/or legatees of the decedent. Where the succession is not relatively free from debt or where the business affairs involved are complex, an administration is necessary in order that the surviving spouse can determine the net assets before accepting the succession and becoming liable for its debts. But where an administration is undertaken solely to determine the estate tax liability of the decedent's share, the expenses of administration are chargeable solely to the decedent's half of the community. Succ. of Helis, 226 La. 133, 75 So.2d 221 (1954).[5]
In the Helis case the community, appraised at almost $10,000,000.00, had outstanding liabilities of about $700,000.00. *416 Mr. Helis left his estate to his four major children. The tax collector opposed the executor's attempt to deduct the administrative expenses entirely from the decedent's share of the community.
The Supreme Court, noting that title to half of the community property vested in the wife from the moment of its acquisition,[6] determined that "an administration of the community was totally unnecessary except for the purpose of facilitating the computation and payment" of Federal estate taxes. The court held that the authorities for charging half of the administration expenses to the widow's share of the community were inapplicable under those circumstances.
In the present case the succession record shows there was no necessity for an administration of the community in order to settle the community affairs and to determine and distribute the net assets. The sworn descriptive list of community property itemized immovable property valued at about $32,000.00, homestead certificates valued at $101,000.00, and other personal property (mostly bank accounts) valued at almost $50,000.00. The community checking account contained almost $6,000.00, and there were apparently no debts other than those paid by the executor under court authority (less than $3,000.00). Furthermore, there were no filings between the executor's petitions for authority immediately following his qualification and Mrs. Sharp's motion to terminate the administration.
Thus, there were ample funds to discharge all debts and to reserve an adequate amount for payment of the tax liability. If the administration was necessary on behalf of the legatees of Mr. Sharp's half of the community (a question which is not before us), the determination and liquidation of Mrs. Sharp's share of the community did not necessitate the administration, nor did she derive any benefit therefrom. Indeed, the administration has caused her to wait almost four years to claim her half of a virtually debt-free community.
We conclude that, although expenses which are incurred necessarily in the administration of a community are chargeable proportionately to each spouse's share of the community, the fees in the present case do not qualify as community administration expenses chargeable to Mrs. Sharp's share of the community.
Because of this conclusion we need not consider Mrs. Sharp's complaint that the executor's fee and the attorney's fee were excessive. Additionally, her opposition to a proposed survey was conceded by the executor, who agreed to delete from the tableau the amount reserved for the survey.
Finally, citing Culpepper v. Slater, 131 So.2d 76 (La.App. 2nd Cir. 1961), Mrs. Sharp contends that she is entitled to interest on her share of the cash from the date of her demand therefor. Although interest on cash was granted in the Culpepper case under special circumstances which do not appear here, we deny Mrs. Sharp's demand for another reason. When the executor undertook the administration, he invested the cash in interest bearing treasury bills. The executor's account shows that he added the interest accrued when this investment matured to the mass of the succession assets and proposed to pay Mrs. Sharp her half of the interest. Mrs. Sharp's present demand for interest after the maturity date is based in substance on the alleged failure of the executor to prudently administer the estate by reinvesting the cash at interest. Any complaint in that respect addresses itself to a personal action against the executor and not to a claim for interest against the mass of the succession.
*417 The judgment homologating the tableau of distribution is therefore reversed insofar as it approves the assessing of one-half of the executor's fee and the attorney's fee to Mrs. Sharp's share of the community. As to the appellant, Mrs. Sharp, the judgment is affirmed in all other respects.
Reversed in part affirmed in part.
NOTES
[1] The executor explained in his brief that completion of the succession had been delayed beyond his control by the estate tax audit, although he had requested immediate action.
[2] In his brief the executor stated he requested this type of service because he had previously experienced substantial delays with registered mail to Mrs. Sharp's rural address.
[3] The notice read:

"PLEASE TAKE NOTICE of the filing of the account and Tableau of Distribution filed by the Executor in the above succession, and you are cited to appear within ten (10) days, from date hereof in order to file whatever opposition you might wish to make thereto."
[4] We further reserve judgment on the issue (raised sua sponte) as to whether Mrs. Sharp was precluded by the judgment of homologation from opposing those portions of the tableau of distribution which were not directly concerned with payments of the debts and charges of the succession. See C.C.P. art. 3301 et seq. in Ch. 7, Payment of Debts and Charges of Succession. When the tableau of distribution is combined with the final account, an interested person may oppose any item properly included in the final account at any time before the account is homologated, which cannot take place until ten days after a copy of the account is served in the manner provided for service of citation. C.C.P. arts. 3335, 3336.
[5] See also McCullough v. United States, D.C., 134 F.Supp. 673 (1955).
[6] In Creech v. Capitol Mack, Inc., La., 287 So.2d 497 (1973), the Supreme Court held that the wife's undivided one-half ownership of community property is imperfect (lacking use and control) until dissolution of the community, at which time her ownership becomes perfect.